JOURNAL ENTRY AND OPINION
Shishal Hitchcock (appellant) appeals from the decision of the Cuyahoga County Common Pleas Court, Juvenile Division, which granted a motion for permanent custody of her five oldest children, Amira Hitchcock (dob 3/16/88), Terrance Debose a.k.a. Hitchcock (dob 5/27/89), Torrence Debose a.k.a. Hitchcock (dob 2/24/90), Charles Hitchcock (dob 3/15/91), and Charde' Beard a.k.a. Hitchcock (dob 9/28/92) in favor of Cuyahoga County Department of Children and Family Services (CCDCFS). For the reasons stated below, we affirm.
The record demonstrates that appellant's five oldest children were adjudged neglected and placed under protective supervision of CCDCFS on September 2, 1993. On June 24, 1994, these five children, and her sixth child, Stanley Beard a.k.a. Hitchcock (dob 9/6/93), were committed to the temporary custody of CCDCFS. On May 17, 1996, the temporary custody of the children was modified to long-term foster care. On October 28, 1996, CCDCFS moved the court to modify the children's status from long-term foster care to permanent custody. Hearing on CCDCFS' motion for permanent custody commenced on January 21, 1998 and was continued to March 4, 1998. In support of its motion, CCDCFS presented the testimony of eleven witnesses. Appellant, in opposition to the motion, presented the testimony of her social worker/therapist, Ann Sylvester.
CCDCFS' first witness, Myron Stern, Ph.D., seven-year-old Torrence's psychotherapist for the past one and one-half years, testified that Torrence has a positive relationship with his foster mother, he depends upon her and his adjustment in the foster home is good. He described Torrence as a child fearful of violence because he suffered from frightening experiences in a chaotic home life, coupled with serious neglect, abuse and drug abuse in the home. Because of these fears, Torrence expressed concern about appellant's younger children, who remain in the home. Torrence expressed anxiety about this custody hearing and his own lack of permanency. As a result, Dr. Stern supported permanent custody for Torrence.
Gayle Nevels, Amira's and Terrance's counselor and social worker for the past two years, addressed the issues of their separation loss, depression, acting out behaviors, difficulties with their peers and low self-esteem. She testified that Amira, age nine, feels safe in her current placement and, although she is torn by her loyalty to her mother, Amira recognizes that she would be in the role of caretaker for appellant if she was returned to her care. Amira has exhibited anxiety and fear of the fighting, boyfriends and punishments in appellant's home and responds by acting out in defiance and fighting. Therefore, Ms. Nevels recommended that Amira be placed into permanent custody of CCDCFS with visits with her mother.
Ms. Nevels stated that Terrance, age eight, was currently being treated in the Cleveland Christian Home because he is suicidal. Terrance reported violent memories, fears being hurt by adults and suffers from out of control rage, creating a danger to that appellant hit Terrance during a visitation at the Metzenbaum Center.
Ms. Nevels concluded that both children suffer from major depression and separation issues. They are behaviorally special needs children suffering from the effects of abandonment and neglect. Therefore, she concluded that re-unification was not in the best interests of these children and she recommended permanent custody for both children.
Edith Rice, foster mother for the past four years of Amira, Torrence and Terrance, testified regarding the children's behavioral problems. She confirmed that Terrance has now been placed in residential treatment for his problems. She testified that Amira, as a result of her emotional problems, becomes involved in fighting at school and testified that Torrence suffers from anxiety. Although both Amira and Torrence have expressed a hope to stay in her home, she is unable to commit to adopting them without assurance that she would be able to receive the support services which they need. However, she agreed that were she to adopt the children, she would permit appellant to have a relationship with them.
Pamela Strickland, a resource consultant for Positive Education Program, testified that she was involved in assisting appellant with parenting skills for her sixth child, Stanley Beard, Jr. from February 1996 to June 1997. She described the PEP parenting program as goal-directed which includes positive parenting management techniques with alternatives to handling children's behaviors. When transportation was provided, appellant attended only 32 percent of the scheduled days. Ultimately, appellant terminated her participation in the program without completion blaming transportation difficulties. Nonetheless, Ms. Strickland offered appellant additional community support service by providing in-home assistance three times during the summer of 1997. Finally, although Ms. Strickland considered another parenting program for appellant, appellant's case was closed because of her apparent disinterest.
Linda Zielinski evaluated both appellant and Stanley Beard, father of Charde' and Stanley, Jr., by interview and testing through the Juvenile Court Diagnostic Clinic. Originally, appellant had been scheduled for testing in August 1997, but because of missed appointments and rescheduling, her testing was not completed until November. Ms. Zielinski testified that during the interview process, appellant became both argumentative and defensive when she was questioned about the length of time which had passed without completion of her case plan. Appellant justified this failure claiming that she did not need some of the parenting classes because black children respond differently to the recommended behavioral techniques from white children. Ms. Zielinski opined that appellant's antagonism toward authority tended to preclude her utilization of services available to her. Ms. Zielinski stated that although Mr. Beard was cooperative, he failed to have insight into the issues which caused the children to be removed from the home. Ms. Zielinski found that neither parent had expended a great deal of effort to benefit from the services provided and concluded that the parent's use of repression, their lack of insight and their test scores indicate that permanent custody by CCDCFS would be in the best interests of the children.
Ms. Zielinski's written report, entered into evidence, included in her opinion that:
 * * * Ms. Hitchock's own childhood experience of abuse and neglect have rendered her incapable of providing consistent, nurturing care for her children. There are several characteristics of anti-social personality emerging, i.e., irresponsibility, lack of remorse, and lack of empathy regarding the safety of others.
Lisa Claus, a licensed professional clinical counselor at Beech Brook and Charles Hitchcock's therapist for one and one-half years, testified that Charles has adjustment issues. She evaluated his adjustment difficulties as less significant than those of his older siblings. Originally, Ms. Claus hoped that if appellant could complete her case plan within a year, Charles might be reunified with her because he is strongly bonded to her. However, upon consideration of the length of time that appellant has already had to complete the case plan without success, she conceded that reunification may not be possible within a reasonable amount of time and, thus, she recommended permanent custody would be beneficial to Charles and should be granted in favor of CCDCFS.
The court adjourned for the day and continued hearing on the motion to March 4 at 8:30 a.m. On March 4, upon re-convening, appellant's counsel moved for a further continuance of the hearing due to appellant's failure to appear. Over objection by counsel for both appellant and Mr. Beard, appellant's motion for continuance was denied.
CCDCFS next presented the testimony of Arlyce Nichols, the family's case manager from August 1994 to January 1997, who confirmed that appellant's original case plan included parenting, counseling, domestic violence classes and both drug and alcohol assessment. She reported that appellant had been enrolled in AIRS parenting program but had failed to complete it. Subsequently, both drug treatment and domestic violence counseling were eliminated from appellant's case plan; but, as appellant failed to complete counseling and parenting classes, those goals remained. In an attempt to effect reunification in January 1996, Ms. Nichols requested an additional ninety days to permit appellant to complete her reunification case plan. However, appellant failed to follow the plan. Ultimately, because the children were unable to return to appellant's home and they needed to be in an adoptable state, Ms. Nichols filed the CCDCFS' request for permanent custody.
Rebecca Tidball, a licensed social worker at Cleveland Christian Home, Terrance's individual therapist for six months, testified that Terrance had been placed into residential treatment because his aggressive episodes posed a danger both to himself and his family members in his foster home. When angry, Terrance makes suicidal verbalizations. She stated that Terrance exhibits fears for his safety due to his prior experiences with violence and "whuppings."
Paula Jones, Charde' Beard's case manager at Beech Brook, testified that visitation is scheduled twice a month with five-year-old Charde' and her parents; however, her parents have failed to adhere to this scheduled visitation. Previously, Charde' had weekend visitations with her parents but the visitations were terminated because of alleged physical altercations between the parents. Ms. Jones noted Charde's behavior has recently regressed, which she concluded could be due to mixed messages Charde' receives from her parents, who have led her to believe she may return home soon. Ms. Jones opined that Charde's current limbo state is detrimental to her but concluded that Charde's situation would ultimately improve upon the resolution of her permanency accompanied by appropriate services.
Finally, Kim Billips, the CCDCFS Social Worker assigned to the Hitchcock family since February, 1997, testified as to her concerns regarding the parenting abilities of both appellant and Mr. Beard. Based upon Mr. Beard's psychological assessment, Ms. Billips expressed concern about Mr. Beard's parenting ability, further noting that Mr. Beard was referred to domestic violence assessment in June 1997, but failed to complete the program. He has been referred to drug assessment four times but has failed to attend.
Ms. Billips testified that appellant has been in four parenting programs but had failed to complete any program. Most recently, appellant's parenting skills had been assessed on February 3, with a finding that her skills were below average in all parenting categories. Ms. Billips testified that CCDCFS has been working toward reunification of appellant with her children for over four years without her successful completion of a parenting program as required by her case plan. Ms. Billips concluded that these children need permanency and neither Mr. Beard nor appellant has shown sufficient commitment to the children to consider reunification.
Finally, Ms. Billips testified that reunification is not contemplated with the other three men who are the biological fathers of these children. She stated that the whereabouts of Terrance Debose, father of Terrance and Torrence, is unknown; they have had no communication with Anthony Hill, Amira's father; and Charles' father, Ladon Williams, is currently in prison. On cross-examination, Ms. Billips stated that CCDCFS is planning to file for protective supervision of appellant's two younger children who currently remain in her care.
CCDCFS rested, whereupon appellant's counsel renewed her motion for continuance, which was denied by the court.
Appellant called Ann Sylvester, her clinical social worker at BeechBrook, to testify on her behalf. Ms. Sylvester testified that she started appellant's reunification therapy in November 1995. At that time, she noted that appellant appeared to have problems with anger, anxiety, depression and self-esteem. Initially, the therapy dealt with those issues in order to facilitate appellant's ability to work with the system in parenting classes. However, appellant attended only fifty percent of her scheduled weekly appointments. She concluded that appellant's depression played a role in the missed appointments, but she said that appellant was unwilling to take medicine for her depression. Because appellant suffers from active major depression, her therapy may need to continue indefinitely. Ms. Sylvester believed appellant is motivated to reunify with her children and that she desires a chance to develop positive support systems. Nonetheless, she admitted that although appellant has made headway, it is unclear how much more time would be necessary for appellant to reach the goals necessary for reunification. Ms. Sylvester admitted that appellant's anger and frustration spill out on the children and conceded that appellant could not parent all seven children at this time. She opined that although reunification for the two younger children would not be possible immediately, she stated that reunification may be possible for them after an additional year or two of therapy. However, she concluded that the door is closed on the possibility of appellant's reunification with her three older children.
No further witnesses were called, appellant's motion for continuance was renewed and denied, closing arguments were heard and the court ordered proposed findings of fact and conclusions of law to be submitted by the parties.
On March 12, the guardian ad litem submitted his written report to the court, which recommended the grant of permanent custody to CCDCFS for all five of the children and stated in pertinent part that:
 * * * the children * * * should not be placed with the parents because following their placement outside the home, and notwithstanding reasonable case planning and diligent efforts by the agency to assist them to remedy the problems that initially caused the children to be placed outside the home, they have failed continuously and repeatedly for a period of six months or more to substantially remedy the conditions causing the children to be placed outside the home.
* * *
 A grant of permanent custody is in the best interests of the children. All witnesses, including the mental health professionals and counselors, testified that permanent custody to DCFS was in the best interests of the children.
* * *
 Were any of these children to be returned to either mother or father I believe they would be at risk. They all have special psychologicalneeds and the anxiety associated with this trial has further exacerbated their emotional problems. I don't believe that either mother or father could provide their needs now or in the near future.
* * *
 A grant of permanent custody would also be in the best interests of the children because they are all adoptable and will benefit most from a permanent and secure placement.
On April 13, 1998, the court, upon review of the file, submitted findings of fact and conclusions of law, along with its own notes, and found, by clear and convincing evidence, that it is in the children's best interest to grant permanent custody of the children to CCDCFS; that reasonable efforts had been made to prevent removal of the children from their home; and that the children were neither abandoned nor orphaned. Moreover, the court found that the children cannot be placed with their parents within a reasonable time or should not be placed with their parents because appellant has failed to remedy the conditions that caused the removal of the children from their home and the alleged fathers have failed to regularly support visit[s] or communicate with the children and the children have bonded with their foster parents. Appellant's motion to stay execution of judgment pending this appeal was denied.
Appellant appeals the grant of permanent custody of her five children to CCDCFS[1] and advances two assignments of error for our review.
 I. APPELLANT'S UNITED STATES, AND OHIO CONSTITUTIONAL, AND DUE PROCESS RIGHTS WERE VIOLATED WHEN SHE WAS DENIED THE OPPORTUNITY TO TESTIFY ON HER OWN BEHALF AND CONFRONT AND CROSS[-]EXAMINE WITNESSES AGAINST HER.
 II. THE CUYAHOGA COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT MOTHER SHISHAL HITCHCOCK FAILED TO REMEDY THE CONDITIONS THAT PROMPTED REMOVAL OF HER CHILDREN FROM HER HOME.
In her first assignment of error, appellant urges reversal of the decision of the trial court alleging that her due process andSixth Amendment constitutional rights were violated when the trial court denied counsel's motion for a continuance and held the second day of hearing in her absence. Appellant claims that she was denied the right to testify on her own behalf, the right to cross-examine witnesses and the opportunity to confer with her attorney and, as such, she was denied a fair trial.
Juv.R. 23 sets forth the standard for granting continuances providing: [c]ontinuances shall be granted only when imperative to secure fair treatment for the parties. The decision to grant or deny a request for a continuance is entrusted to the sound discretion of the trial court. State v. Unger (1981), 67 Ohio St.2d 65. In determining whether to grant or deny a motion for continuance, the trial court must balance any potential prejudice to a [party against] concerns such as the court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice. Id. at 67. This standard of review is equally applicable to proceedings in juvenile court and Juv.R. 23. In re Basco (May 7, 1997), Scioto App. No. 96CA2418, unreported. To reverse on the basis that the court has abused its discretion, a reviewing court must be convinced that the lower court engaged in a course of conduct or assumed an attitude that was either arbitrary, capricious or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
First, we recognize that appellant is entitled to protection under the Due Process Clause and parental custody may be terminated only through procedures which satisfy due process requirements. See Sant osky v. Kramer (1982), 455 U.S. 745. Other appellate jurisdictions have applied the balancing test established in Mathews v. Eldridge (1976), 424 U.S. 319, 335, 96 S.Ct. 893, 903,47 L.Ed.2d 18, 33-34 to determine whether a parent has a due process right to be present at a permanent custody hearing. In Mathews, the Supreme Court established a balancing test to determine parental due process rights in custody termination proceedings. The three factors considered are: 1) the private interest affected, 2) the risk of erroneous deprivation and the probable value of additional safeguards, and 3) the governmental burden of additional procedural requirements. Id.
An essential and basic right of any parent is to raise his or her children. Santosky, supra at 753. Parents have a fundamental liberty interest in the care, custody and management of their child. In re Awkal (1994), 95 Ohio App.3d 309, 315. A parent and child have substantial protected rights in their family relationship. State ex rel. Heller v. Miller (1980), 61 Ohio St.2d 6,10. However, the rights and interests of the natural parents are not absolute. In re Awkal, supra at 315. The state may permanently terminate parental rights where the parents are unfit. State ex rel. Heller, supra at 10. The parties must be afforded every procedural and substantive protection allowed by law because the termination of parental rights is the family law equivalent of the death penalty in a criminal case. In re Smith (1991), 77 Ohio App.3d 1,16. However, "the clear and convincing evidence standard satisfies the requirements of due process in civil cases which involve government-initiated proceedings that threaten the individual involved with a `significant deprivation of liberty' or `stigma.'" Santosky, supra at 756.
Appellant claims that the hearing was unfair because she was unable during the second day of hearing to confer with her attorney and to testify on her own behalf. However, when we balance all the factors involved, we note that a full record was made of the proceedings, appellant was represented by counsel, counsel cross-examined the witnesses presented by CCDCFS and appellant presented a witness on her own behalf. We further find that the testimony given the second day of hearing was both consistent with and cumulative to the testimony presented on the first day of hearing when appellant was present and able to confer with counsel. Finally, we note that appellant presented no proffer of her claimed testimony in opposition to the motion, nor did she demonstrate prejudice. Accordingly, under the circumstances of the matter before us, we do not find that appellant's absence during the second day of testimony denied her a fair trial.
Next, appellant complains that her confrontation rights were abridged due to her absence from the courtroom on the second day of her hearing. The Sixth Amendment to the United States Constitution provides that, "in all criminal proceedings, the accused shall enjoy the right * * * to be confronted with the witnesses against him." (Emphasis added.) It has been held that this Sixth Amendment right is applicable only in criminal proceedings, not civil trials or "non-criminal" adjudications. See, e.g., In re Burchfield (1988), 51 Ohio App.3d 148, 154; In re James A. (R.I. 1986),505 A.2d 1386, 1390. See, also, Coy v. Iowa (1988), 487 U.S. 1012,1015, 101 L.Ed.2d 857, 108 S.Ct. 2798 ("The Sixth Amendment gives a criminal defendant the right `to be confronted with the witnesses against him.'"). Specifically, several courts have held that the Confrontation Clause does not apply in abuse, neglect and dependency proceedings in juvenile court. Burchfield, supra; In re Pieper Children (1991), 74 Ohio App.3d 714, 725-726; In re: Stephanie Collier (Sept. 21, 1992), Butler App. Nos. CA 91-07-124, CA 91-07-125, unreported; In re Krista House (Feb. 24, 1992), Butler App. Nos. CA 91-01-016, CA 91-02-022, unreported; In re Spurlock Children (Jan. 27, 1992), Butler App. Nos. CA 0-01-013, CA 90-01-014, unreported.
Since this case involved a request for permanent custody in juvenile court following the abuse, neglect and dependency proceedings, we find appellant was not entitled to confront the witnesses against her under either the federal or state Confrontation Clauses. See In Re Henderson (Nov. 28, 1997), Lake App. No. 96-L-068, unreported.
Nonetheless, appellant urges this court to distinguish the holding of Inre Burchfield (1988), 51 Ohio App.3d 148 wherein the court stated the confrontation clause of the Sixth Amendment does not apply to dependency and neglect proceedings in juvenile court and find that where a parent is not present through no fault of her own, the Confrontation Clause applies as it does in a criminal case. However, under the circumstances of this case, we do not find appellant's arguments to be compelling.
In Reynold v. Ross Cty. Children's Services Agency (1983),5 Ohio St.3d 27, the decision relied upon by the Burchfield court, our supreme court found a parent's similar argument to be without merit where counsel was present, a record was made and the parent failed to show prejudice as a result of the court's action.
In this case, appellant was present for the first full day of hearing, during which six witnesses testified, because of appellant's failure to successfully complete a parenting plan over the prior four years, that it would be in the best interests of the children that permanent custody be granted. Appellant was able during the proceedings to confer with counsel, and these witnesses were cross-examined by counsel. On the second day of hearing, when appellant failed to appear, CCDCFS presented four additional witnesses whose testimony further substantiated the assertions that appellant had failed to remedy the circumstances which caused the children to be removed from their home and that permanency was in their best interests. Appellant's counsel was present and effected cross-examination of these witnesses. Further, the sole witness called by appellant to testify on her behalf, conceded that she could not recommend reunification of appellant with her three older children and she admitted that, even with successful therapy, reunificationof appellant with her two younger children could not be effected for one to two additional years.
Thus, in conformance with the reasoning set forth in Reynolds, supra, we decline to find that the Confrontation Clause as found in the Sixth Amendment of the U.S. Constitution or Article I Section10 of the Ohio Constitution was violated in this civil matter.
Even so, if we were to consider that a constitutional error existed in this case, then, using the standard which would be applied in the criminal context, we would be required to determine whether such error was either prejudicial or harmless. The test to be utilized is found in Chapman v. California (1967), 386 U.S. 18, which held that before a federal constitutional error can be held harmless, the court must be able to declare a belief that the error was harmless beyond a reasonable doubt. Id. at 23. Further, in Harrington v. California (1974), 395 U.S. 258, the United States Supreme Court held that where the evidence supplied in violation of a constitutional right was merely cumulative and the other evidence was overwhelming, the reviewing court could conclude beyond a reasonable doubt that the denial of the constitutional right was harmless error.
We find that the evidence in support of permanency for these children was overwhelming. Therefore, even if the trial court had erred in holding the hearing in appellant's absence, we would find appellant's absence from the second day of the permanent custody hearing to have been harmless beyond a reasonable doubt.
Accordingly, because we find appellant was accorded a fair hearing, we find no abuse of the trial court's discretion in its denial of appellant's request for a continuance. Appellant's first assignment of error is without merit.
In her second assigned error, appellant urges reversal, claiming that CCDCFS failed to present clear and convincing evidence that she failed to remedy the conditions which prompted the removal of her children from her home.
R.C. 2151.414 governs the termination of parental rights where, as here, the child is neither abandoned nor orphaned. In determining whether to terminate parental rights and grant permanent custody to CCDCFS pursuant to R.C. 2151.414(B), the juvenile court must find by clear and convincing evidence that: 1) the grant of permanent custody to the petitioning agency is in the best interest of the child and 2) the child cannot or should not be placed with either parent within a reasonable time. In re Higby (1992), 81 Ohio App.3d 466, 468. Clear and convincing evidence is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. In determining the best interests of the children, the court is directed to consider all evidence which is relevant to the case. R.C. 2151.414(D).
In this case, the court found by clear and convincing evidence that it is in the best interest of the children to grant permanent custody to CCDCFS stating:
 "the children cannot be placed with their parent(s) within a reasonable time or should not be placed with their parent(s) for the following reasons: Mother has failed to remedy the conditions that caused the removal of said children from their home * * * children have bonded with their foster parents.
The record demonstrates that these children had been adjudged neglected and dependent four years earlier after having been left alone without supervision and were in immediate danger from their surroundings causing the removal to be necessary to prevent immediate or threatened physical or emotional harm. The evidence demonstrates that at that time the children were removed from appellant's custody, appellant was nineteen years old with six children under six years of age, she was overwhelmed and depressed, the children had been left alone and neglected and she had admitted to daily marijuana use. Although a case plan was developed for her, over the next four years, appellant failed to successfully reach the goals of any of the four parenting programs which she began. Pamela Strickland testified that appellant failed to complete the parenting program provided by Positive Education Program; Linda Zielinski concluded that the parents had not expended a great deal of effort to benefit from the services provided; Arlyce Nichols noted that appellant failed to complete her reunification plan in the areas of parenting and counseling; Kim Billips testified that appellant had failed to complete the parenting program after four years and has failed to show sufficient commitment to the children to consider reunification. The report of the guardian ad litem concluded that despite case planning and the diligent efforts of CCDCFS, the parents have failed to remedy the conditions which caused the children to be placed outside the home. Even appellant's own witness, Ann Sylvester, conceded that the possibility of appellant's reunification with her two younger children remains a year or two in the future because of her inability to complete therapy. Finally, at the time of the hearing, appellant's parenting skills remained unacceptable in each category evaluated.
The trial court, after considering whether the parents have substantiallyremedied the conditions which caused the children to be placed outside the home, is required to consider parental utilization of medical, psychiatric, psychological and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties. R.C.2151.414(E)(1). Thus, pursuant to R.C. 2151.414(E)(1), it can be said that [f]ollowing the placement of the child[ren] outside the child[ren]'s home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child[ren] to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child[ren] to be placed outside the child[ren]'s home.
We find that the evidence clearly and convincingly supports the conclusion that appellant has failed continuously and repeatedly to substantially remedy the conditions causing these children to be placed outside their home.
In determining the best interests of the children, it can be said that the trial court considered the relevant factors, including the interaction and interrelationship of the children with the parents, siblings, and foster parents; the wishes of the children as expressed through the guardian ad litem; the custodial history of the children and the children's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency. See R.C. 2151.414(D)(1)-(4).
The evidence presented at the hearing demonstrated that a professional opinion elicited on behalf of each of these children included their individual need for permanency. Dr. Myron Stern supported permanent custody for Torrence; Gayle Nevels recommended permanent custody for Amira and Terrance; Lisa Claus conceded that reunification of Charles with his mother may not be possible within a reasonable time and recognized that permanent custody should be granted; Paula Jones opined that the current limbo state is detrimental to Charde'. Both CCDCFS' caseworkers for the family, Arlyce Nichols and Kim Billips, testified to the children's need for permanency. Finally, the guardian ad litem, whose involvement with the family spanned four years, advised the court in his report that permanent custody should be granted to CCDCFS, stating that notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the children to be placed outside the home, they have failed continuously and repeatedly for a period of six months or more to substantially remedy the conditions causing the children to be placed outside the home. * * * Were any of these children to be returned to either mother or father I believe they would be at risk. They all have special psychological needs and the anxiety associated with this trial has further exacerbated their emotional problems. I don't believe that either mother or father could provide their needs now or in the near future. This report of the guardian ad litem concluded [a] grant of permanent custody would also be in the best interest of the children because they are all adoptable and will benefit most from a permanent and secure placement. Thus, it can be said that the totality of the evidence before the court clearly and convincingly supported the trial court's conclusion that permanent custody of CCDCFS is in the best interests of these children.
Accordingly, we find that clear and convincing evidence was presented to the trial court to support both its conclusion that appellant had failed to remedy the conditions which prompted the removal of her children from her home four years earlier and its conclusion that granting permanent custody to CCDCFS was in the best interest of each child involved in this matter. Appellant's second assignment of error is without merit.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Juvenile Court Division of the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ________________________________ TIMOTHY E. McMONAGLE, JUDGE
KARPINSKI, P.J. and SPELLACY, J., CONCUR.
[1] Stanley Beard, Sr., father of Charde' Beard, does not advance an appeal from the decision of the court.