## In re BACORN.

[Cite as *In re Bacorn* (1996), 116 Ohio App.3d 489.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 95–P–0154.

Decided Dec. 23, 1996.

*Victor V. Vigluicci*, Portage County Prosecuting Attorney, and *Barbara Oswick*, Assistant Prosecuting Attorney, for appellee Portage County Department of Human Services.

*William D. Lentz*, for appellant Odie Bacorn, Sr.

*David S. Hirt*, guardian *ad litem*.

CHRISTLEY, Judge.

This appeal emanates from a decision by the Juvenile Division of the Portage County Court of Common Pleas wherein appellee, the Portage County Department of Human Services, was granted long-term foster care of Amanda Bacorn.

Appellant, Odie Bacorn, Sr., and his wife, Martha, have been married through common law for approximately seventeen years.[1]  Four children have been born as issue of the marriage: Juanita, age seventeen; Katherine, age eight; Amanda, born October 30, 1979; and Odie, Jr., born May 1, 1982.  Only Amanda is the subject of this appeal.[2]

On March 29, 1992, Amanda was charged with criminal trespass and incorrigibility, and placed on probation for one year.  In April 1992, appellee entered into a voluntary case plan with Martha and Odie, Sr., based on concerns for the Bacorn children's welfare, particularly Odie, Jr., and Amanda.  Odie, Jr., and Amanda had appeared on numerous occasions in juvenile court on delinquency charges.  The plan was implemented to help Odie, Sr., and Martha provide structures to help the children deal with their problems.

On July 17 and 19, 1992, Amanda was charged with domestic violence, assault, and probation violations.  Her probation was continued.  She was subsequently charged with domestic violence on May 11, June 26, August 29, and November 4, 1993, and, again, her probation was continued.

On August 30, 1993, Odie, Sr., filed a complaint in juvenile court asserting that he was the victim of an episode of domestic violence by Amanda.  At her arraignment and detention hearing, held that day, Amanda denied that she committed this offense.  She was held at the juvenile detention center until her adjudication hearing on September 3, 1993.  The court found her to be delinquent by domestic violence, but suspended her ninety-day detention on the condition that she be placed on regular probation.

On November 16, 1993, Amanda was in court on the charges of domestic violence, incorrigibility, and resisting arrest.  Instead of being removed from her home, she was placed in the Port Halcyon program at the Portage Children's Center.  When her behavior failed to improve and her parents were unable to control her, Amanda's case worker, Cheryl Schneider, spoke with Amanda's probation officer about removing her from her parents' custody and placing her in appellee's legal custody.  He filed a motion for such placement on February 8, 1994, asking the court to review and/or modify its previous dispositional order.

· On February ·24, 1994, a conference was held at Amanda's middle school regarding her defiant attitude, insubordination, tardiness, and absences.  Her schedule was changed to a partial-day one, and she attended the Port Halcyon

---

1.  Martha did not file an appeal from the court's judgment and is, therefore, not considered an appellant in this appeal.

2.  In October 1993, appellee was granted temporary custody of Odie, Jr., and eventually, permanent custody.  That case is also presently before this court: *In re Bacorn*, Portage App. No. 96–P–0015.

program in the afternoon. She was also enrolled in a home-base counseling program.

At the initial hearing on the motion for legal custody, held March 3, 1994, Amanda denied the allegations in the motion and requested counsel. She was released to her parents on house arrest.

Amanda was arraigned on March 4, 1994, on the charge of domestic violence. The referee found that she was not successful in the Port Halcyon program and recommended that appellee be given temporary custody of Amanda. The court approved and adopted the referee's recommendations on March 4, 1994, and ordered that Amanda be released to appellee for placement. She was placed at Lincoln Place, a residential treatment center.

On March 14, 1994, appellee filed an amendment to its initial case plan, adding Amanda to the case plan. At this point, the plan's goal was reunification.

On June 26, 1994, Amanda was moved from Lincoln Place to a therapeutic foster home.

On August 5, 1994, a semiannual review hearing was held wherein the court found that reasonable efforts were made to make it possible for Amanda to return home, but that she could not or should not return home. Appellee retained temporary custody of Amanda.

On August 23, 1994, Amanda was released from probation, as she had had no serious infractions in the past year.

On September 2, 1994, another semiannual review was conducted. Because Martha and Odie, Sr., had separated and the family was in a "crisis" situation, it was recommended that Amanda stay in appellee's custody.[3] The court accepted appellee's report without amendment on September 12, 1994.

On September 16, 1994, appellee sent letters to Martha and Odie, Sr., pertaining to their visitation rights with their children and their need to attend parenting classes, beginning September 19. Arrangements were also made for them to begin individual and marital counseling with Dr. Cynthia Miner.

On September 26, 1994, Amanda was moved to another foster home, after a physical confrontation with her previous foster father.

On November 30, 1994, Martha and Odie, Sr., were ordered to pay child support and supply health insurance coverage for Odie, Jr., and Amanda.

On December 1, 1994, Martha, Odie, Sr., and Juanita went to visit Amanda. When Schneider would not extend the visit, Amanda became upset and her family

---

3. This separation was only temporary, and appellants reconciled in 1995.

refused to leave. As a result, the time of visitation was changed so that security could be present.

On December 19, 1994, Amanda was transferred back to Lincoln Place due to her assaultive behavior toward her foster parents.

On January 13, 1995, a hearing was held to the court regarding Martha and Odie's progress on the case plan and their motion to modify support.

On February 7, 1995, the court granted appellee's motion to extend the time by six months in which it could have temporary custody of Amanda.

On February 24, 1995, the court accepted appellee's semiannual review report without amendment.

On August 3, 1995, appellee filed a second request for a six-month extension of its temporary custody of Amanda. At the annual review and hearing on appellee's motion for extension, the court granted appellee's motion.

On August 15, 1995, appellee filed a motion for long-term foster care for Amanda, pursuant to R.C. 2151.415(C)(1)(a), (b), and (c).

The matter came on for hearing on September 14 and October 23, 1995. In its November 8, 1995 judgment entry, the juvenile court found, by clear and convincing evidence, that Amanda was unable to function in a family-like setting because of her special needs and that she must remain in residential or institutional care. It also found, by clear and convincing evidence, that Amanda was sixteen, had been counseled on permanent placement options available, was unwilling to accept a permanent placement, and that appellee could prepare her for an independent life. Amanda expressed her desire to be placed in long-term foster care rather than be placed for adoption.

On December 7, 1995, Odie, Sr., filed an appeal, asserting the following as error [4]:

"1. The trial court committed prejudicial and reversible error in placing the child, Amanda Bacorn, in long term foster care with the Portage County Department of Human Services.

"2. The trial court committed reversible prejudicial error by granting the prosecutor's oral motion to amend its motion for long term foster care at the end

---

4. On July 3, 1996, this court granted Martha's motion for leave to file an *amicus curiae* brief in support of Odie, Sr. However, because she used this as an attempt to file an appellate brief on her own behalf instead of supporting Odie, Sr.'s brief, we will not consider it. Martha failed to individually appeal the court's judgment entry as to Amanda, and, thus, she cannot file a brief supporting her own position.

of all the evidence." [5]

Pursuant to R.C. 2151.415(C)(1), before the juvenile court could place Amanda in long-term foster care, it had to find, by clear and convincing evidence, that the disposition of long-term foster care was in Amanda's best interests and that one of the following existed:

"(a) The child, because of physical, mental, or psychological problems or needs, is unable to function in a family-like setting and must remain in residential or institutional care;

"(b) The parents of the child have significant physical, mental, or psychological problems and are unable to care for the child because of those problems, adoption is not in the best interest of the child, * * * and the child retains a significant and positive relationship with a parent or relative;

"(c) The child is sixteen years of age or older, has been counseled on the permanent placement options available to [her], is unwilling to accept or unable to adapt to a permanent placement, and is in an agency program preparing [her] for independent living."

This court finds that the findings of fact set out by the juvenile court are insufficient to show that there was clear and convincing evidence which supported the court's determination that long-term foster care was in Amanda's best interests.

Under R.C. 2151.415(C)(1)(a), the juvenile court was required to issue findings of fact which supported its determination that Amanda is unable to function in a family-like setting. R.C. 2151.415(C)(2)(a) states:

"The court shall issue a finding of fact setting forth the reasons for its finding[.]"

Although the record as a whole does support the juvenile court's judgment, the only factual findings which the juvenile court made were specifically based on the testimony of Dr. Miner. Those findings were insufficient. Among the findings relied on by the court was Dr. Miner's statement that Amanda could not live in her parents' home due to her psychological problems in that there was ongoing marital disorder, physical violence, and chaos present in the home. The court also recited the fact that Dr. Miner testified that Amanda was unable to function in a family-like setting and, thus, must remain in residential or institutional care.

However, the court abused its discretion in relying solely upon Dr. Miner's testimony in reaching its decision. Dr. Miner testified on two occasions that she

---

5. On February 28, 1996, this court granted Odie, Sr.'s, motion to consolidate this appeal with No. 96–P–0015 for hearing purposes only.

had not seen Amanda in nine or ten months and did not feel that she could make a knowledgeable recommendation as to whether Amanda could be returned to her parents' home, or any family-like setting. In response to appellee's inquiry whether Amanda should be returned home, Dr. Miner testified as follows:

"At this point in time, I have not seen Amanda and don't really have a lot of idea of what is happening in her treatment, so I don't know her progress at this time. * * *"

Even though Dr. Miner continued to say that at the time she did not think Amanda should return home, she had already indicated that her testimony was untimely.

On cross-examination, Dr. Miner was asked whether Amanda could be returned to Martha within a year. Dr. Miner responded by saying:

"Again, that's very difficult to answer because I don't know what, you know, part of the problem was Amanda's behavior at that time too. And, I don't know what her current status is. I haven't seen her for 10 months—9 months."

Therefore, although we believe that there was other clear and convincing evidence in the record as a whole which supported placing Amanda in long-term foster care for her best interests as she could not live in a family-like setting, the court chose to base its decision solely on Dr. Miner's testimony. Had the court instead indicated that it also relied on the testimony of Liz Mileto, Amanda's counselor at Lincoln Place, who confirmed Dr. Miner's conclusions after frequent and recent sessions with Amanda, this would have been sufficient. In that case, there would have been evidence of the continued existence of the same symptoms which led Dr. Miner to make her original conclusion that Amanda could not function in a family-like setting. However, we may not base our determination on other evidence in the record because the factual findings of the juvenile court focused exclusively on Dr. Miner's testimony, and her testimony was legally insufficient when viewed in isolation.

Although the juvenile court made two additional specific findings of fact which would have supported a subsequent finding of long-term foster care under R.C. 2151.415(C)(1)(b), for whatever reason, it chose not to base its decision on that section.[6] Because the juvenile court chose not to rely on those factual findings, we will not second-guess that decision.

---

6. In its findings of fact, the court stated:

"8. * * * Dr. Miner stated that the [Zoloft] has not helped Mrs. Bacorn in dealing with her parenting deficiency. Dr. Miner further testified that Mrs. Bacorn's turbulent relationship with her husband interferes with her inability [*sic*] to parent. Dr. Miner further stated that Mrs. Bacorn has made some effort, but progress has been very slow;

■ The juvenile court also based its decision on R.C. 2151.415(C)(1)(c); however, it was error to do so. Although this appears to be a matter of first impression in Ohio, we hold that R.C. 2151.415(C)(1)(c) applies only to children who are sixteen years of age or older at the time they express their opinions regarding long-term foster care and when they undergo psychological evaluations. In the instant matter, Amanda turned sixteen after the long-term foster care hearing but prior to the court's decision. All of the testimony on this issue was premised on facts gathered while Amanda was under sixteen years of age. There was no evidence presented which was adduced from consulting with Amanda after she had reached the age of sixteen. Because subsection (C)(1)(c) must be proven by clear and convincing evidence, we cannot regard the statutory designation of age sixteen to be a discretionary issue.

Accordingly, we hold, as a matter of law, that in order for a court to rely upon R.C. 2151.415(C)(1)(c) when ordering long-term foster care, the child at issue must be sixteen at the time she was counseled, as well as at the time she expressed her opinion regarding the disposition, and at the time of the hearing.

Therefore, based on the insufficient factual findings supporting an award of long-term foster care pursuant to R.C. 2151.415(C)(1)(a), the juvenile court's failure to rely on R.C. 2151.415(C)(1)(b) in reaching its conclusion, and the inapplicability of R.C. 2151.415(C)(1)(c), the juvenile court's decision was not supported by clear and convincing evidence. Accordingly, appellant's first assignment of error is with merit.

Based upon our determination of appellant's first assignment of error, his second assignment of error has been rendered moot.

The judgment of the juvenile court is reversed, and the cause is remanded for proceedings consistent with this opinion. Specifically, we note that because Amanda is still in appellee's temporary custody, this reversal pertains only to the juvenile court's placement of Amanda into long-term foster care. Upon remand, a new disposition as to Amanda will need to be rendered.

*Judgment accordingly.*

FORD, P.J., concurs.

EDWARD J. MAHONEY, J., dissents.

---

"9. * * * Mr. Bacorn indicated to Dr. Miner that he saw nothing wrong with hitting his wife and kids. It was Dr. Miner's opinion that neither parent could meet the needs of the child, Amanda Bacorn, at this time."

EDWARD J. MAHONEY, J., retired, of the Ninth Appellate District, sitting by assignment.