DECISION AND JUDGMENT ENTRY
Terry, Mary, and Melissa Moody appeal the decision of the Athens County Court of Common Pleas, Juvenile Division, which denied the motion of Athens County Children Services ("ACCS") for permanent custody and placed Melissa in a planned permanent living arrangement ("PPLA") pursuant to R.C. 2151.415. Mary Moody argues that the trial court did not have jurisdiction to consider ACCS's motion because its prior grant of legal custody of Melissa to her paternal grandparents had been appealed. We disagree because we find that the trial court's continuing jurisdiction is not inconsistent with an appeal. Terry, Mary, and Melissa Moody argue, for various reasons, that the trial court's judgment is against the manifest weight of the evidence. Because some competent, credible evidence supports the trial court's decision to place Melissa in a PPLA, we disagree. Accordingly, we affirm the judgment of the trial court.
 I.
In 1997, ACCS filed a complaint alleging that Melissa was a dependent child pursuant to R.C. 2151.04 and that Terry Moody, Melissa's father, repeatedly raped his daughter, Thelma Moody while she was between eight and thirteen years old.[2] Mary Moody is Thelma's stepmother. Thelma and Melissa are half-sisters, whose mothers are sisters. In 1998, the trial court found that Terry had sexually abused Thelma, despite a jury acquitting Terry Moody of related criminal charges, and adjudicated Melissa a dependent child. The trial court placed Melissa in the temporary custody of ACCS. After extending the temporary custody, the trial court eventually placed Melissa in the legal custody of her paternal grandparents, Carl and Thelma Moody. The appeal of this case is currently pending. In re Moody Athens App. Nos. 00CA5 and 00CA6.
Pursuant to Carl and Thelma Moody's request, ACCS removed Melissa from their custody. ACCS then placed Melissa in a foster home, from which she ran away. As a result, ACCS placed Melissa in a group foster home. Melissa also ran away from the group foster home.
In June 2000, both Mary and Terry Moody filed motions to modify disposition requesting that custody of Melissa be returned to them. On July 19, 2000, the trial court placed temporary custody of Melissa back with ACCS because of Carl and Thelma Moody's request. Also on July 19, 2000, ACCS filed a motion for permanent custody of Melissa.
The guardian ad litem filed her report with the court in November 2000. At that time, Melissa was living in the group home and had not yet run away. According to the guardian ad litem, Melissa was doing very well at the group home and liked it there. The guardian ad litem indicated that Melissa was having some problems at the home. She further indicated that the one-hour per week visitation with Melissa's parents was enough for Melissa and that Melissa did not want to take time away from her other activities to spend more time with her parents. The guardian adlitem noted Melissa's continuing affection for her parents. She concluded that a PPLA in the group home would be in Melissa's best interest.
The trial court held a hearing on Terry Moody's and ACCS's motions. ACCS presented the testimony of Crystal Mayhone. Mayhone and Melissa lived in the same foster home during the summer of 2000. Mayhone explained that they ran away together and ended up at a campground where Melissa's parents were staying. Mayhone claimed that Terry, Mary and Thelma Moody were at the campground when she and Melissa arrived. Mayhone testified that Melissa knew that her parents would be staying at the campground. She also testified that after she was at the campground for about an hour, Mary Moody agreed to drive her to West Virginia. Mayhone stated that a police officer pulled Mary Moody over and found out that Mayhone was a runaway.
Laura Philabaum, director of the Athens County Child Support Enforcement Agency, testified that neither Terry nor Mary Moody had ever paid child support to the agency. She explained that the trial court had ordered them to pay child support and that they first moved to modify the order on October 13, 2000, after the payments were overdue.
Mary Moody testified that she still believes that Terry Moody did not sexually abuse Thelma. She explained that she established a residence separate from Terry on October 31, 2000, in an attempt to regain custody of Melissa because that is what ACCS asked her to do, but has no plans to divorce Terry Moody. Mary Moody admitted that Melissa's case plan required her to move out of Terry Moody's residence in the early part of 1998. She explained that she did not move out at that time because doing so was a "big step." Mary testified that she did not know Mayhone until she saw her standing alongside the road on the night that Melissa and Mayhone ran away from their foster home. She denied ever seeing Melissa that evening. Mary expressed her desire to have more visitation time with her daughter and to have her return home.
Terry Moody testified that he did not sexually abuse Thelma. He also denied that Thelma or Melissa were at the campground on the night that Melissa ran away. Terry also testified that Melissa's grades have fallen since she entered foster care.
Athens County Sheriff's Deputy John Deak testified that he stopped Mary Moody's car on August 1, 2000. He noticed a person hiding under blankets in the backseat of the car. He later identified this person as Mayhone. According to Deak, Mary Moody first stated that she did not know Mayhone, but later admitted that she had seen Mayhone at Melissa's foster home.
David Jackson, an ACCS caseworker, testified that he had been Melissa's caseworker since February 2000. He testified that Melissa ran away twice after being removed from her grandparents' home. According to Jackson, Melissa liked living at the foster home and only after she ran away with Mayhone did she express any dissatisfaction with the foster home. Melissa ran away from the group home the weekend before the hearing. He explained that there was some evidence that she had been with her parents that weekend and that they assisted her in running away. He testified that Melissa has the ability to live in a family situation if she wants to; however, Melissa's attitude prevents her from being placed in a family foster home. Jackson also testified that Melissa has a poor attitude about adoption and refuses to consider it. Jackson admitted that Melissa loves her parents, is bonded to them, and identifies them as her parents. According to Jackson, Melissa's visitations with her parents go well, but her parents do not establish boundaries and allow Melissa to badger them about money.
Jackson opined that Melissa cannot get the type of home that she needs with her father because he is not able to establish appropriate boundaries and because of the risk to Melissa of abuse similar to that which precipitated Thelma's removal from the home. He further opined that Mary Moody is unable to provide such a home because she is also unable to impose appropriate boundaries and has shown the inability to protect her stepdaughter, Thelma. He concluded that a grant of permanent custody to ACCS would be in Melissa's best interest.
Jackson then testified that the parents faithfully attend visitation. He also explained that Melissa is currently in a group home where she is rewarded for good behavior by moving through a system of levels. The home has several independent living apartments for the children who are on the highest achievement level and are old enough to begin learning independent living skills. Melissa has demonstrated the ability to move up these levels. Jackson explained that the children at the group home are treated like members of a family, supervised twenty-four hours a day, and have access to crisis mental health services at all times.
The trial court spoke with Melissa in chambers, where she expressed her desire to live with her parents.
After the parties submitted proposed findings of fact and conclusions of law, the trial court denied ACCS's motion for permanent custody and placed Melissa in a PPLA pursuant to R.C. 2151.415. In so doing, the trial court found that: (1) Melissa's attitude and poor behavior make it impossible to keep her in a traditional foster care placement or relative placement; (2) Terry and Mary Moody have significant mental or psychological problems, as evidenced by Thelma's abuse, and are therefore unable to care for Melissa; (3) it is not in Melissa's best interests to be adopted; (4) Melissa retains a significant and positive relationship with her parents; (4) Melissa will likely reunite with her parents when she turns eighteen; (5) it is appropriate to prepare Melissa for her adulthood by teaching her independent living skills. The trial court concluded that a PPLA is in Melissa's best interests.
Terry Moody appeals asserting the following assignment of error:
 I. The trial court failed to properly consider the child's wishes and the child's best interest by placing the child in a [PPLA].
Mary Moody appeals and asserts the following assignments of error:
 I. The trial court committed reversible error when it proceeded upon the [ACCS's] motion for permanent custody while appeals of the trial court's last disposition in the same case were still pending.
 II. The trial court's decision to place Melissa Moody in a [PPLA] instead of in the custody of her mother, Mary Moody, does not meet the requisite standard of proof and is against the manifest weight of the evidence.
Melissa Moody appeals asserting the following assignment of error:
 I. A [PPLA] as modified disposition for the child, is not in her best interests, and none of the conditions exist under R.C. 2151.415(C) which would permit the court to order PPLA.
 II. The trial court did not adequately consider, or did not indicate how it considered, the strong wishes of this 15½ year old child, and her prior custodial history, in making its decision on modified disposition.
We consolidated these appeals for purposes of briefing and decision.
 II.
We first address Mary Moody's first assignment of error that the trial court did not have jurisdiction to consider ACCS's motion. When the trial court held the hearing on ACCS's motion for permanent custody, the Moody's appeals of the trial court's grant of legal custody to Melissa's paternal grandparents was still pending. Mary Moody argues that the trial court did not have jurisdiction to consider ACCS's motion because it would render the pending appeals moot and usurp our jurisdiction.
"When a case is appealed to the court of appeals, the trial court retains jurisdiction not inconsistent with the court of appeals' jurisdiction to reverse, modify, or affirm the judgment." In re Murray
(1990), 52 Ohio St.3d 155, 160, citing State ex rel. Special Prosecutorsv. Judges (1978), 55 Ohio St.2d 94, 97; In re Kurtzhalz (1943),141 Ohio St. 432, paragraph two of the syllabus. We find that the trial court retained jurisdiction to entertain ACCS's motion because such jurisdiction is not inconsistent with our jurisdiction in the appeal of the trial court's continuation of temporary custody and grant of legal custody to Melissa's paternal grandparents. See In re Murray at 159-160 (rejecting concerns that finding a grant of temporary custody to children's services is a final appealable order would cause delays in permanency planning, among other things, because the trial court retains jurisdiction pursuant to State ex rel. Special Prosecutors). Thus, we overrule Mary Moody's first assignment of error.
 III.
We consider the remaining assignments of error together because they all concern the trial court's decision to place Melissa in a PPLA. Melissa argues that a PPLA is not in her best interests; that the statutory prerequisites to a PPLA, R.C. 2151.415(C), were not present in her case; and that the trial court did not adequately consider her wishes. Terry argues that a PPLA is not in Melissa's best interests. Mary also argues that the statutory prerequisites to a PPLA were not present and that the trial court did not consider placing Melissa with her alone.
 A.
We first consider the arguments that the trial court's judgment is against the manifest weight of the evidence. Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. In re Burchfield (1988), 51 Ohio App.3d 148, 154; In re Miley, (Dec. 7, 1995), Ross App. No. 95CA2137, unreported. Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80. See, also, In re Decker (Feb. 13, 2001), Athens App. Nos. 00CA39 00CA42, unreported (reviewing grant of permanent custody to agency with manifest weight standard of review), In re Vaughn
(Dec. 6, 2000), Adams App. No. 00CA692, unreported.
A parent's right to raise his or her children is an "essential" and "basic civil right." In re Murray, 52 Ohio St.3d at 157, citing Stanleyv. Illinois (1972), 405 U.S. 645, 651. Moreover, parents have a "fundamental liberty interest" in the care, custody, and management of the child. In re Murray at 157, citing Stantosky v. Kramer (1982),455 U.S. 745, 753. However, the rights and interests of natural parents are not absolute. In re McDaniels (Feb. 2, 1993), Adams App. No. 92CA539, unreported.
A PPLA is a disposition that places the legal custody of a child in a child services agency without terminating parental rights. R.C.2151.011(B)(27).
R.C. 2151.413 permits a public children services agency to file a motion requesting permanent custody of a child. If a trial court rejects an agency's motion for permanent custody, it may order a PPLA when appropriate. In re Campbell (Oct. 12, 2000), Cuyahoga App. Nos. 77552 
77603, unreported, citing, In re McDaniel (Feb. 11, 1993), Adams App. No. 92CA539, unreported.
R.C. 2151.415 provides:
 (C)(1) * * * A court shall not place a child in a planned permanent living arrangement, unless it finds, by clear and convincing evidence, that a planned permanent living arrangement is in the best interest of the child and that one of the following exists:
 (a) The child, because of physical, mental, or psychological problems or needs, is unable to function in a family-like setting and must remain in residential or institutional care.
 (b) The parents of the child have significant physical, mental, or psychological problems and are unable to care for the child because of those problems, adoption is not in the best interest of the child, as determined in accordance with division (D) of section 2151.414 [2151.41.4] of the Revised Code, and the child retains a significant and positive relationship with a parent or relative;
 (c) The child is sixteen years of age or older, has been counseled on the permanent placement options available, is unwilling to accept or unable to adapt to a permanent placement, and is in an agency program preparing for independent living.
R.C. 2151.415(C)(1)(c) applies only to children who are sixteen or over when they express an opinion regarding their disposition and at the time of the hearing. In re Bacorn (1996), 116 Ohio App.3d 489, 496. Since Melissa was fifteen during the proceedings below, R.C. 2151.415(C)(1)(c) does not apply.
The trial court reasoned that a PPLA is appropriate for Melissa because it is in her best interest, her attitude and poor behavior have made it impossible to maintain her placement in a traditional foster care or relative placement, Terry Moody and Mary Moody are unable to care for Melissa because of their significant mental or psychological problems (demonstrated by the abuse of Thelma, the failure to protect Thelma from this abuse, and the denial of the abuse), and Melissa retains a positive relationship with her parents. The court also found that given the certainty that Melissa will reunite with her parents at her majority, her best interests require that she be prepared by learning independent living skills. These conclusions suggest that the trial court relied upon R.C. 2151.415(A)(1) and R.C. 2151.415(A)(2).
Some competent, credible evidence exists to support the trial court's findings that Melissa is unable to function in a family-like setting and must remain in residential care (R.C. 2151.415(A)(1)). Jackson testified that Melissa's attitude and poor behavior make it impossible to keep her in a traditional foster care placement or relative placement. Melissa's repeated instances of running away from family-like settings indicate that she is unable to function in such a setting.
Some competent, credible evidence also supports the trial court's determinations that (1) Terry and Mary Moody have significant mental or psychological problems and are unable to care for Melissa because of those problems; (2) adoption is not in Melissa's best interest; and (3) Melissa retains a significant and positive relationship with her parents (R.C.2151.415(A)(2)). The trial court found that Terry sexually abused Melissa's sister, Thelma, and that Mary Moody failed to protect Thelma. Mary Moody testified that she viewed Thelma more as her stepdaughter than as her niece because she raised Thelma since Thelma was three years old. Terry Moody is not amenable to therapy because he continues to deny sexually abusing Thelma. Melissa stated that she did not want to be adopted and has run away from the family-like settings in which she has been placed. Melissa also stated that she retains a positive relationship with her parents. Melissa's guardian ad litem indicated that one hour of visitation per week with her parents was enough for Melissa and that Melissa did not want to take time away from her other activities to spend more time with her parents. The guardian ad litem concluded that a PPLA would be in Melissa's best interest.
Thus, we find that the trial court's decision to place Melissa in a PPLA is not against the manifest weight of the evidence. Accordingly, we overrule Mary Moody's second assignment of error. In so doing, we also find that the trial court's determination that a PPLA is in Melissa's best interest is not against the manifest weight of the evidence. Accordingly, we overrule those portions of the parties' assignments of error that deal with the trial court's best interests determination.
 B.
We next consider Terry and Melissa's arguments that the trial court did not adequately consider Melissa's desire to be returned to her parents.
R.C. 2151.415(C) prohibits the trial court from placing a child in a PPLA if it is not in the best interests of the child. The trial court must consider the wishes of the child in determining the best interests of the child when making a determination pursuant to R.C. 2151.415(C). R.C. 2151.414(D)(2). See, also In re Staten (Oct. 23, 1998), Montgomery App. No. 17146, unreported (overturning grant of permanent custody because wishes of child had not been expressed on the record, therefore the trial court could not have considered them as required).
In its decision, the trial court noted Melissa's desire to be returned to her parents. The trial court noted that this desire, along with the fact that there is no evidence that Terry Moody sexually abused Melissa, is not enough to determine Melissa's best interests. In this case, unlikeIn re Staten, supra, the record is replete with evidence regarding Melissa's wishes. It is clear from the trial court's decision that it considered Melissa's wishes as required by R.C. 2151.414(D). Accordingly, we overrule Melissa's second assignment of error and those portions of Mary and Terry Moody's assignments of error pertaining to the trial court's consideration of Melissa's wishes.
 C.
Finally, we consider Mary Moody's argument that the trial court failed to consider placing Melissa with her alone. By the time of the hearing, Mary Moody had moved into her own apartment in an attempt to gain custody of Thelma.
The trial court's entry indicates that it considered whether either
parent should have custody of Melissa. In its findings of fact, the trial court found that "it is not in Melissa's best interest to be placed in the custody of either parent, due to the sexual abuse of Thelma Moody by Terry Moody, Sr." As the trier of fact, the trial court was entitled to consider Mary Moody's credibility. The trial court expressly found that Mary Moody's testimony surrounding the incident with Mayhone was not credible. The trial court was free to consider the short time that Mary Moody had been living independently of Terry Moody, the difficultly with which Mary Moody moved out of Terry Moody's residence, and Mary Moody's continuing relationship with Terry Moody. Thus, we find that the trial court did consider placing Melissa with Mary Moody, but determined that it was not in Melissa's best interest. Accordingly, we overrule the portion of Mary Moody's second assignment of error dealing with this issue.
 IV.
In sum, we overrule all of Mary, Terry, and Melissa Moody's assignments of error and affirm the judgment of the trial court. We make no determination on the effect that our decision in the pending case of Inre Melissa Moody Athens App. Nos. 00CA5 00CA6 may have on future proceedings in this case. We leave that determination to the trial court.
[2] We affirmed the trial court's grant of permanent custody of Thelma to ACCS in In re Moody (Aug. 7, 2000), Athens App. No. 99CA62, unreported and In re Moody (Aug. 7, 2000), Athens App. No. 99CA63, unreported.