STATE AUTOMOBILE MUTUAL INSURANCE CO., APPELLANT, *v.* CAWLEY ET AL., APPELLEES.

(No. 11-185—Decided November 10, 1986.)

*Ulmer, Berne, Laronge, Glickman & Curtis* and *Harold H. Reader,* for appellant.

*Negin & Negin* and *Morton S. Negin,* for appellees.

CRAWFORD, J.

## Statement of the Case

Plaintiff-appellant State Automobile Mutual Insurance Company commenced this action on April 16, 1984 by filing a complaint for a declaration of non-coverage of the claim of defendants-appellees, Francis and Patricia Cawley. Appellees filed an answer and counterclaim seeking a declaration of coverage. The matter was submitted on stipulations and, on September 13, 1985, the trial court filed its opinion and judgment entry finding that appellees' claim for damage to property was covered under their homeowner's policy. Appellant filed a timely notice of appeal.

## Statement of Facts

In August 1983, appellant issued a homeowner's insurance policy to appellees for their home at 10999 Prouty Road, Concord, Ohio. In November 1983, some automobile parts and inventory were damaged while in storage at a location away from appellees' home. These damaged items were parts inventory and tools from Francis Cawley's defunct business, Cawley Pontiac GMC, Inc. The items were being stored temporarily until they could be resold and returned to General Motors Corporation ("GMC") pursuant to a dealer sales and service agreement between GMC and Cawley Pontiac GMC, Inc.

The automobile dealership had ceased active business in December 1982. Subsequently, appellees, as members of the Board of Directors of Cawley Pontiac GMC, Inc., voted to give appellee Francis Cawley, as sole shareholder, automobile parts and equipment from the business. Cawley Pontiac GMC, Inc. was not dissolved prior to the loss, allowing Francis Cawley to hold the automobile parts and equipment for return and resale to GMC under the terms of the automobile business dealer sales agree-

ment. Francis Cawley stored some of these automobile parts and equipment in Madison, Ohio, where they were subsequently damaged.

## Assignment of Errors

"1. The trial court erred in entering judgment for the defendants-appellees.

"2. The trial court erred in finding that automobile parts from a car dealership awaiting their resale to GMC were not a 'business property' excluded from coverage under a policy of homeowner's insurance."

## Discussion

1. The central issue in the case at bar is whether certain property owned by Francis Cawley can be characterized as "business property" as that term is used in the homeowner's insurance policy issued by appellant to appellees on August 16, 1983. Appellant argues that the property is business property which was not covered under the homeowner's policy. Appellees assert that the property was correctly characterized by the lower court as being non-business "personal property" of Francis Cawley, and as such was covered by the homeowner's insurance policy.

The pertinent language in the homeowner's policy is as follows:

"*Property Not Covered.* We do not cover:

"* * *

"9. *business* property in storage or held as a sample or for sale or delivery after sale;

"10. *business* property pertaining to a *business* actually conducted on the *residence premises*;

"11. *business* property away from the *residence premises*. (Section I-Coverages, Coverage C — Personal Property, Exclusions 9-11).

"'*Residence premises*' means the one or two family dwelling, other structures, and grounds or that part of any other building where you reside and which is shown as the 'residence premises' in the Declaration [*i.e.,* in this case, the appellees' home in Concord, Ohio]. (Definitions, number 8).

"We cover personal property owned or used by any *insured* while it is anywhere in the world. * * * (Section I-coverages, Coverage C — personal property)."

In the case *sub judice,* Cawley Pontiac GMC, Inc. ceased business operations. At that time, the dealership corporation's motor vehicles were sold by its bank; some of its equipment was given to Francis Cawley. The minutes of a special meeting of the dealership's directors evidenced such actions. The dealership corporation was not actually dissolved by its board of directors because it was necessary to use the corporation to collect and claim other assets.

The parts and equipment given to appellee were being stored in Madison, Ohio, where they were subsequently damaged by water. Appellant contends that the parts and equipment constituted "business property away from the premises," and, therefore, were excluded from coverage under the express terms of appellees' homeowner's policy. This argument is not well-taken.

Appellant points out that the noun "business" should not be interpreted in a strained and legalistic fashion, and that the principle that provisions in an insurance contract are to be given the meaning used in common speech has been set forth in *Aschenbrenner* v. *United States Fid. & Guar. Co.* (1934), 292 U.S. 80, 85, as follows:

"Unless it is obvious that the words [in an insurance contract] are intended to be used in their technical connotation they will be given the meaning that common speech imports."

Appellant argues that Francis

Cawley's property constituted business property under the meaning that common speech imports. While it is clear that the property would have been business property while owned by the dealership corporation, once the property was given to Francis Cawley, it logically took on a different classification.

Once the property was given to this appellee, he was free to do with it what he pleased. He could use the property, sell it, or merely store it, as he did under the facts as stipulated. Francis Cawley was storing the property so that it could be returned to GMC for cash, pursuant to an agreement between the dealership corporation and GMC. As the stipulated facts in the case reveal, the prices for the returned property were to be determined by GMC, not by appellee.

Considering the above facts, it does not seem that appellee's property was "business property" within the meaning "that common speech imports." *Id.* Appellee was not selling the property in a "retail" fashion. He was not selling the property to make a profit — only to be reimbursed. He was not setting his own price for the property. There is no evidence that appellee intended to use the property for gain, as the common-speech meaning of business implies. This was, basically, a one-time return of property — not the establishment of a business relationship between Francis Cawley and GMC. Appellee was not in the "business" of selling this type of property, under the common speech meaning of the word.

For all of the above reasons, appellant's first assignment of error is overruled.

2. Appellant's second assignment of error is similar to its first, and states that the property was "business property in storage or held as a sample or for sale or delivery after sale" and should, therefore, be excluded from coverage under the homeowner's policy.

For all of the reasons discussed above, this assignment of error is likewise without merit and should be overruled.

Conclusion

As appellees correctly point out, the Supreme Court of Ohio has stated that a court of appeals may not reverse a judgment as being against the weight of the evidence if it is supported by some competent, credible evidence on each essential element. *C. E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279, 8 O.O. 3d 261, 376 N.E. 2d 578. In this case, the trial court's opinion and judgment entry set out adequate findings of fact which are drawn from the evidence and stipulations which support its judgment. While the property may have been business property when it was owned by the dealership corporation, once it was given to appellee and he stored it for return to GMC, the property took on the nature of personal property and, as such, was covered by appellees' homeowner's insurance policy.

*Judgment affirmed.*

O'NEILL and CASTLE, JJ., concur.

CRAWFORD, J., of the Court of Common Pleas of Franklin County, sitting by assignment.

O'NEILL, J., of the Seventh Appellate District, sitting by assignment.

CASTLE, J., retired, of the Twelfth Appellate District, was assigned to active duty pursuant to Section 6(C), Article IV, Constitution.