IN RE BURCHFIELD ET AL.

(No. 1396—Decided
August 16, 1988.)

*John P. Lavelle,* for appellants Bradley and Barbara Burchfield.

*D. Michael Mullen,* assistant prosecuting attorney, for appellee Athens County Children Services.

STEPHENSON, J. This is an appeal from a judgment entered by the Court of Common Pleas of Athens County, Juvenile Division, finding Florence Burchfield to be an abused, neglected, and dependent child, and also finding Marsella Burchfield and Bradley Burchfield, Jr. to be dependent children. The juvenile court granted temporary custody of the children to Athens County Children Services, appellee herein. Barbara and Bradley Burchfield, appellants herein, are the parents of the children.

Appellants assign the following errors:

"I. The trial court committed reversible error in allowing a six year old girl to testify by videotape thereby depriving the parents of due process of law.

"II. The judgment of the trial court is against the weight of the evidence."

On October 26, 1987, a complaint was filed by Thomas Marx, a caseworker employed by appellee, averring that Florence Burchfield, who was then five years old, appeared to be an abused, dependent, and neglected child in that she exhibited evidence of being a victim of "sexual activity" as defined under R.C. Chapter 2907. The complaint further averred that the natural father, Bradley Burchfield, engaged in "sexual contact" and "sexual activity" as defined in R.C. 2907.01(B) and (C), respectively. Appellee prayed that Florence be declared to be abused pursuant to R.C. 2151.031(A) and/or (B), dependent pursuant to R.C. 2151.04 (C), and neglected pursuant to R.C. 2151.03(B). Appellee further requested temporary custody of Florence.

On October 26, 1987, Marx also filed complaints in which he averred that Marsella Burchfield, who was then three years old, and Bradley Burchfield, Jr., who was then one year old, were dependent children because the condition or environment of the children posed a danger to their physical, mental, and emotional health and well-being. Both complaints prayed that the two minors be adjudicated dependents pursuant to R.C. 2151.04(C) and that appellee be granted temporary custody of the

children. Also on October 26, 1987, appellee moved for an *ex parte* order placing immediate temporary custody of all three Burchfield children in appellee pending a hearing on the complaints. The motions, filed pursuant to Juv. R. 13(D), were granted by the trial court the following day.

On December 10, 1987, appellee filed a motion to videotape the testimony of Florence Burchfield pursuant to R.C. 2151.3511. In the memorandum in support of the motion, appellee asserted that Florence, now six years old, would suffer emotional trauma if she were to testify in the usual manner. In their memorandum opposing the use of videotaped testimony, appellants asserted that the rules of competency should prohibit the use of not only videotaped testimony of Florence but also her testimony at trial. In its journal entry filed December 11, 1987, the trial court ordered that the testimony of Florence should be given in accordance with R.C. 2151.3511(C), which permits testimony to be presented via two-way closed circuit television.

At the adjudicatory phase of the hearings held on this matter, the following pertinent facts were adduced. Dr. William H. Carlson, a pediatrician who had previously treated the three Burchfield children, testified that his physical examination of Florence Burchfield disclosed that her hymen was no longer intact and that her vaginal opening was abnormally large for a girl her age. Dr. Carlson concluded that Florence's vagina had been penetrated, but he did not know the source of the penetration or when it occurred. Dr. Carlson testified, however, that previous examinations of her genitalia during well child visits should have disclosed any sexual abuse. The physical examinations of Bradley, Jr. and Marsella Burchfield were largely unremarkable except that Marsella exhibited a few irregularities of her hymen. Dr. Carlson testified that Marsella had extra folds or thickening on the left side of her hymen, but he could not determine whether this was the result of trauma or a normal variant.

Dr. James M. Orr, also a pediatrician, performed an independent examination at the request of appellants on their two daughters. Dr. Orr testified that his examination of Florence's genitalia revealed a torn hymen and enlargement of the vaginal opening. Although Dr. Orr's measurement of the vaginal opening was slightly different from that of Dr. Carlson, Dr. Orr testified that the two measurements were not inconsistent since his measurement was smaller than Dr. Carlson's measurement and the difference could be the result of healing in the time interval between the two examinations. Dr. Orr concluded that, based upon his examination and the history, there was a strong suspicion that Florence had been sexually abused.

Dr. Orr testified that examination of Marsella's genitalia revealed possible evidence of scar tissue around the vaginal opening, and the vaginal opening was at the upper limits of normality for a girl of Marsella's age. Dr. Orr further testified that there was a strong suspicion of sexual abuse based upon the history and physical examination of Marsella, but without the history, the findings would be borderline. Dr. Orr stated that he was more concerned about sexual abuse in Florence's case, but that he was concerned enough about the prospect of sexual abuse in Marsella's situation that he would want to note the findings in the chart and follow up on the matter.

Janet M. McDaniel, the fifteen-year-old niece of appellants, testified that she occasionally baby-sat for ap-

pellants and also visited their home to see their children. McDaniel testified that she observed her uncle, Bradley Burchfield, insert his finger into Florence's vagina on two separate occasions. On the first occasion in January 1987, the incident took place on the couch in the living room of appellants' home. The second instance of sexual abuse occurred in September 1987, in appellants' bathroom. McDaniel testified that each episode lasted between one and two minutes and that the mother, Barbara Burchfield, was unaware of what was occurring. McDaniel stated that she did not initially tell anyone about the abuse because she was afraid of Bradley Burchfield and because she was also afraid she would not be able to see her nieces and nephew anymore.

McDaniel testified that she was prompted to report these incidents as the result of what occurred after a trip to Coolville, Ohio. McDaniel testified that several family members and friends, including her aunt and uncle, drove to Coolville to evaluate repairs just made to the transmission of a car and to pick up a check. She further testified that both her aunt and uncle were drinking that day and that Bradley Burchfield was drunk. On the drive back from Coolville, according to McDaniel, Bradley kept trying to grab her leg. Once back at appellants' home, McDaniel was instructed to sleep in appellants' daughters' room since she had earlier requested her parents to allow her to spend the night at appellants' home. While McDaniel was lying in bed, Bradley Burchfield came into the room after his wife went to bed and attempted to get in bed with her, according to McDaniel. After shoving her uncle back, McDaniel wrapped the blanket around herself. Bradley Burchfield grabbed the blanket and at the same time he ripped McDaniel's shirt and bra. McDaniel

further testified that she shoved her uncle away and that he was scared off when he saw the headlights of an approaching car. McDaniel stated that she did not say anything to either appellant the next day.

The record reflects that when McDaniel gave her initial statement to appellee, she stated that she observed the first incident of sexual abuse of Florence by Bradley Burchfield while standing in appellants' hallway. At the hearing, however, she stated she observed the incident while sitting on the couch in the living room. She stated that her statement at the hearing was correct rather than the statement made at the initial interview. McDaniel further testified that she was nervous at the initial interview and uncomfortable about the subject of sexual abuse. She further stated that she appreciated the gravity of the allegations, that she did not fabricate the incidents because Bradley attempted to molest her, and that her testimony was not the result of a family feud.

Both appellants testified that Bradley did not sexually abuse any of their children. Appellants also testified that their two daughters inserted either pencils, crayons, or their fingers into their vaginas on their own. Bradley Burchfield testified that he told his daughter, Florence, not to insert objects into her vagina, but neither appellant sought medical care for the problem. Mrs. Burchfield, however, did take Florence to a pediatrician when she developed symptoms of vaginitis, according to the testimony of Bradley Burchfield.

Appellants further testified regarding one possible instance of molestation of Florence involving a teenaged boy named Matthew Willison. Mrs. Burchfield testified that her daughter told her about the incident, but she did not know whether to believe her daughter. Mrs. Burchfield

stated that she discussed the situation with the boy and his mother, but Matthew denied any wrongdoing. Appellants did not investigate further or seek medical consultation regarding the matter.

Before Florence Burchfield was permitted to testify, the trial court examined her in chambers in order to determine whether she was competent to testify. The trial judge concluded as a result of the interview that Florence was "very intelligent, very articulate, and * * * very definitely * * * aware of the difference between telling the truth and telling a lie." The court further concluded that Florence was competent to testify. However, before Florence testified, Leslie K. Johnson, director of outpatient services for Tri-County Mental Health Services, testified from her work with Florence that Florence would not likely be able to relate the entire substance of her testimony in open court and that testifying in open court would cause Florence emotional trauma. Johnson further testified that her opinion was based upon not only her eight sessions with Florence, but also upon children's behavior in general. She stated it was difficult for children to testify about matters which jeopardize parental relationships because of a conflict of feelings.

Florence was then permitted to testify by means of closed circuit television which was described by the trial court judge as follows:

"We had a very complex sophisticated system set up, and I want to explain this so it is a matter of the record. There was a camera in the court chambers which was trained upon Florence, that camera was wired to a monitor that was in the courtroom where the parent's [sic] were sitting. So that the parent's [sic] observed Florence though her entire testimony. Also, they could hear the questions asked of her, and they could hear the answers that she gave. At the same time she was seated on the couch in the court chambers, and she could see a video screen that came from a camera in the courtroom that were trained on her mother and father. In other words, all the time that she testified she was looking at a monitor which was trained upon her father and mother, and she testfied on direct examination, [and] upon cross-examination."

Florence testified that her father touched her in places that should not have been touched. She further testified that her father "[p]ut his finger up in here," while Florence was in the bathroom. On cross-examination, Florence again stated that her father had touched her and that two other individuals including one named "Matthew" had also touched her or her sister. At no time during the testimony of Florence did any party raise an objection.

On rebuttal, Johnson testified that girls under the age of six years do not have much awareness of their vaginas unless someone has caused them to become aware. Johnson concluded that it would be unusual for children like Florence or Marsella to insert pencils or crayons in their vaginas because of their young ages.

On February 29, 1988, the adjudicatory hearing on this matter was concluded. Upon review of the testimony and evidence presented to the court, the court in its journal entry filed March 28, 1988, concluded that appellee had proven the allegations in the complaints by clear and convincing evidence. The court further determined that Bradley Burchfield had sexually abused his daughter, Florence. By consent of the parties, the court proceeded to the dispositional phase and found that the best interests of the children would be served by granting

temporary custody of the children to appellee pursuant to R.C. 2151.353.

Appellants' first assignment of error asserts that the trial court erred by allowing Florence to testify by videotape, which deprived appellants of due process of law. It must initially be noted that although appellants describe the testimony as "videotaped," the record reflects that Florence testified live before the court by means of closed circuit television. The trial court granted appellee's motion to permit this manner of testimony pursuant to R.C. 2151.3511(C) which provides, in pertinent part, as follows:

"(C) In any proceeding in juvenile court *involving a complaint in which a child is charged* with a violation listed in division (A)(1) of this section and in which an alleged victim was a child who was under eleven years of age when the complaint was filed, the prosecution may file a motion with the juvenile judge requesting the judge to order the testimony of the child victim to be taken in a room other than the room in which the proceeding is being conducted and be televised, by closed circuit equipment, into the room in which the proceeding is being conducted to be viewed by the child who is charged with the violation and any other persons who are not permitted in the room in which the testimony is to be taken but who would have been present during the testimony of the child victim had it been given in the room in which the proceeding is being conducted. * * * The child who is charged with the violation shall be permitted to observe and hear the testimony of the child victim giving the testimony on a monitor and shall be provided with an electronic means of immediate communication with his attorney during the testimony, but shall be restricted to a location that is such that he cannot be seen or heard by the child victim giving the testimony, ex-

cept on a monitor provided for that purpose. The child victim giving the testimony shall be provided with a monitor on which he can observe, during his testimony, the child who is charged with the violation." (Emphasis added.)

In construing a statute, as the trial court did in the case herein, courts must determine the legislative intent, which is accomplished by examining the language employed and the purpose to be accomplished. *Henry* v. *Central Natl. Bank* (1968), 16 Ohio St. 2d 16, 45 O.O. 2d 262, 242 N.E. 2d 342, paragraph one of the syllabus; *Featzka* v. *Millcraft Paper Co.* (1980), 62 Ohio St. 2d 245, 247, 16 O.O. 3d 280, 282, 405 N.E. 2d 264, 266. However, courts do not have authority to ignore the plain and unambiguous language under the guise of judicial interpretation, but rather in such situations the courts must give effect to the words used. *Dougherty* v. *Torrence* (1982), 2 Ohio St. 3d 69, 70, 2 OBR 625, 626, 442 N.E. 2d 1295, 1297; *Ohio Dental Hygienists Assn.* v. *Ohio State Dental Bd.* (1986), 21 Ohio St. 3d 21, 23, 21 OBR 282, 284, 487 N.E. 2d 301, 303; *State* v. *Krutz* (1986), 28 Ohio St. 3d 36, 38, 28 OBR 96, 98, 502 N.E. 2d 210, 213. Further, R.C. 1.49, which governs court considerations as to legislative intent, applies only if a statute is ambiguous. Courts have a duty to give effect to all of the words used in the statute and not to judicially delete words used or insert words that are not used. *Beau Brummell Ties, Inc.* v. *Lindley* (1978), 56 Ohio St. 2d 310, 311-312, 10 O.O. 3d 438, 440, 383 N.E. 2d 907, 909; *Bernardini* v. *Bd. of Edn.* (1979), 58 Ohio St. 2d 1, 4, 12 O.O. 3d 1, 5, 387 N.E. 2d 1222, 1226.

In its discussion with counsel regarding the applicability of R.C. 2151.3511 to the instant case, the trial court, in concluding that the statute applied, apparently adopted the view of

appellee that, based upon the title of the statute, "Videotaping of testimony of child sex offense victim under eleven years of age," R.C. 2151.3511 also applied to the adjudicatory hearing in abuse, neglect, and dependency cases. The language, repeated throughout R.C. 2151.3511, is clear and unambiguous. R.C. 2151.3511 applies only when the accused is a child and the victim is a child under the age of eleven years. Although the record does not disclose the ages of appellants herein, it is clear that neither one is a child and, therefore, R.C. 2151.3511 is inapplicable.

In *Reynolds* v. *Ross Cty. Children's Services Agency* (1983), 5 Ohio St. 3d 27, 5 OBR 87, 448 N.E. 2d 816, the Supreme Court of Ohio addressed, *inter alia,* the same issue as is before this court. Briefly, *Reynolds* involved an appeal from a judgment denying Roger Reynolds a writ of habeas corpus for the return of his five children. While Reynolds was incarcerated in Chillicothe Correctional Institute, the natural mother of their five children turned the children over to Ross County Children's Services. Temporary custody and eventually permanent custody of the children were granted to Ross County Children's Services, the children being determined to be dependents. By order of October 12, 1979, this court of appeals found that appellant had not been served notice of the proceedings for temporary and permanent custody and, therefore, the order granting Ross County Children's Services permanent custody was void.

A hearing was then held to determine whether Reynolds was suitable to have custody of his five children. This court determined that appellant was not suitable to have custody of the minor children and ordered custody of the children to remain in the adoptive parents and denied the writ. Appellant in *Reynolds, supra,* as in the case *sub judice,* argued as follows:

"Appellant also argues that he was denied his right to due process of law and to confront witnesses against him because he was not permitted to remain in the courtroom while the children testified. A record was made of the proceedings and appellant's counsel was present and cross-examined the children. This is often the practice where a child is called upon to testify in a custody proceeding. See *Walker* v. *Walker* (1974), 40 Ohio App. 2d 6 [69 O.O. 2d 3]. In view of the fact that appellant's counsel was present and a record was made, appellant has shown no prejudice as a result of the court's action, and we find this argument to be without merit." *Reynolds, supra,* at 29, 5 OBR at 89, 448 N.E. 2d at 818.

Appellants argue that *Reynolds* is factually distinguishable from the case at bar. The instant case, however, is less invasive of the parents' right to due process and right to confrontation than *Reynolds.* In *Reynolds,* the appellant was completely absent from the courtroom with only his counsel remaining to cross-examine the children, but in the instant case appellants were able to remain in the courtroom with a television monitor which enabled them to observe and hear the cross-examination of their daughter as well as the direct examination of her by appellee and cross-examination by the guardian *ad litem.* Manifestly, the closed circuit television system allowed appellants' counsel to raise objections to the testimony as well as to confer with his clients during the questioning if necessary. Therefore, pursuant to the rationale of *Reynolds, supra,* appellants were not deprived of their rights of due process or confrontation by the closed circuit television method of testifying by Florence.

The United States Supreme Court

has recently held that the Confrontation Clause by its words provides criminal defendants with the right to "confront" face to face the witness giving evidence against him at trial. *Coy* v. *Iowa* (1988), 487 U.S. 1012. In *Coy,* the appellant was charged with sexually assaulting two thirteen-year-old girls. At the time of the conviction, Iowa had a statute which permitted the child victims of sexual abuse to be protected through either the placement of a screen between the testifying victim and the accused or by the use of a one-way closed circuit television system, compared to Ohio's two-way closed circuit television system. The Iowa Supreme Court, which rejected appellant's argument that the use of a screen between the accused and the victim violated the Confrontation Clause of the Sixth Amendment, was reversed by the United States Supreme Court.

Appellant's reliance on *Coy, supra,* is misplaced since the Confrontation Clause of the Sixth Amendment is inapplicable in civil proceedings. See, *e.g., In re James A.* (R.I. 1986), 505 A. 2d 1386, 1390; *In re W.J.C.* (Wis. App. 1985), 369 N.W. 2d 162, 163; *Chmela* v. *State Dept. of Motor Vehicles* (Wash. 1977), 561 P. 2d 1085, 1088. Constitutional enactments providing that in criminal prosecutions the accused shall have the right to meet the witnesses against him face to face apply only to criminal proceedings and have no application to the trial of civil actions. See, generally, 88 Corpus Juris Secundum (1955) 166, Trial, Section 60.

Further, the Confrontation Clause has been expressly held to be inapplicable to dependency and neglect proceedings in juvenile courts. *Smith* v. *Edmiston* (W.D. Tenn. 1977), 431 F. Supp. 941, 945. The parents in *Smith, supra,* like appellants herein, argued that they were deprived of their right to due process because the procedures used by the juvenile court denied them the right to confront and cross-examine the witnesses against them. The *Smith* court rejected this argument, concluding that the right of confrontation applies only to criminal proceedings.

Even though the Confrontation Clause is applicable only to criminal cases, it must be recognized that there is a fundamental right of parents to raise their children which is protected under due process. *Stanley* v. *Illinois* (1972), 405 U.S. 645; *State, ex rel. Heller,* v. *Miller* (1980), 61 Ohio St. 2d 6, 15 O.O. 3d 3, 399 N.E. 2d 66. Basic to due process is a requirement of a fair trial in light of the interest being protected.

Under the circumstances of this case, we perceive no fair-trial deprivation by the use of two-way closed circuit television testimony. Appellants were able to cross-examine their daughter, and in fact did exercise that right. Although R.C. 2151.3511(C) was not applicable to the instant case, appellants were not deprived of any constitutional right by this procedure adopted by the court below. Cf. *Reynolds, supra.* For the foregoing reasons, appellants' first assignment of error is overruled.

Appellants' second assignment of error asserts that the judgment of the trial court is against the weight of evidence. It is axiomatic in Ohio that judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C. E. Morris Co.* v. *Foley Constr. Co.* (1978), 54 Ohio St. 2d 279, 8 O.O. 3d 261, 376 N.E. 2d 578; *Burr* v. *Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St. 3d 69, 23 OBR 201, 491 N.E. 2d 1101; *State Auto. Mut. Ins. Co.* v. *Cawley* (1986), 33 Ohio App. 3d 160, 514 N.E. 2d 935.

The judgment entry of the trial court of March 28, 1988 found that Florence Burchfield was an abused, neglected, and dependent child pursuant to the allegations in the complaint. The judgment entry further found that Bradley, Jr. and Marsella Burchfield were dependents as alleged in the complaints pursuant to R.C. 2151.04(C). The relevant statutory provisions provide in pertinent part as follows.

An "abused child" pursuant to R.C. 2151.031 includes, *inter alia,* any child who:

"(A) Is the victim of 'sexual activity' as defined under Chapter 2907. of the Revised Code, where such activity would constitute an offense under that chapter, except that the court need not find that any person has been convicted of the offense in order to find that the child is an abused child;

"(B) Is endangered as defined in section 2919.22 of the Revised Code, except that the court need not find that any person has been convicted under that section in order to find that the child is an abused child[.]"

A "neglected child" pursuant to R.C. 2151.03 includes, *inter alia,* any child:

"(B) Who lacks proper parental care because of the faults or habits of his parents, guardian, or custodian[.]"

A "dependent child" pursuant to R.C. 2151.04 includes, *inter alia,* any child:

"(C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming his guardianship[.]"

It is apparent from the record that Florence was penetrated by some foreign object. Neither party asserts to the contrary. Appellants contend, however, that Bradley Burchfield did not engage in "sexual activity" with his daughter as that term is defined in R.C. 2907.01(C). However, there is substantial and probative evidence in the record that Bradley Burchfield did engage in sexual activity with his daughter Florence.

Two eyewitnesses, Janet McDaniel and the victim herself, testified that Bradley inserted his finger into his daughter's vagina. McDaniel testified that this activity lasted for one to two minutes on both occasions. Although appellants assert that McDaniel was prejudiced in this matter as the result of family differences, the trial court heard testimony to the contrary. McDaniel testified that she did not fabricate the incidents as the result of her uncle's attack after the trip to Coolville. It is apparent from the outcome that the trial court found McDaniel and the victim Florence to be more credible witnesses than were appellants. As a reviewing court, we must give deference to the findings of the trial court since the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *Seasons Coal Co.* v. *Cleveland* (1984), 10 Ohio St. 3d 77, 80, 10 OBR 408, 410, 461 N.E. 2d 1273, 1276.

There was also testimony by Florence that she told her mother about her father's "bad touches" and that her mother was going to call the police. Although Barbara Burchfield testified that she only threatened to call the police when she and her husband had an altercation, the trial court was in a better position to assess the credibility of these witnesses than this court. *Seasons, supra.* Therefore, the finding by the trial court that Florence was an abused child was supported by competent, credible evidence.

Further, the evidence was such that the trial court could conclude that Florence was a dependent and neglected child. Manifestly, an en-

vironment in which a child is abused by one or more persons is clearly an unsatisfactory home. Florence referred to two other persons who had molested either her or her sister. Further, she told her mother about an incident involving an individual named Matthew and, aside from confronting Matthew and his mother, Mrs. Burchfield did not report the incident to authorities or take her daughter to a physician as the result of the incident.

The finding by the trial court that the other two children were dependent within the meaning of R.C. 2151.04(C) is also supported by the evidence. Appellee need only prove by clear and convincing evidence that the condition or environment of the children was such as to warrant the state to assume the guardianship of the children. *In re Bishop* (1987), 36 Ohio App. 3d 123, 124, 521 N.E. 2d 838, 840. At the adjudicatory phase of the proceedings, the focus of a charge that a child is dependent is on the child and his conditions and not on fault. *In re Bibb* (1980), 70 Ohio App. 2d 117, 24 O.O. 3d 159, 435 N.E. 2d 96; *In re Pitts* (1987), 38 Ohio App. 3d 1, 3, 525 N.E. 2d 814, 816. A finding of dependency must be rooted upon the question of whether the child is receiving proper care. *In re Campbell* (1983), 13 Ohio App. 3d 34, 36, 13 OBR 36, 38, 468 N.E. 2d 93, 95; *In re Pitts, supra,* at 3, 525 N.E. 2d at 816.

Although almost all the evidence pertained to the abuse of Florence, other evidence indicated a suspicion by Dr. Orr that Marsella had also been sexually abused. There was also testimony by Florence that an individual named Paul Williams touched her sister. Finally, in light of the trial court's conclusion that Florence was sexually abused by her father, it follows that so long as the father was in the home with the other two minor children the environment of these children was such as to warrant the state to assume guardianship.

Although the record does not establish that either Bradley, Jr. or Marsella was molested by their father, the unfitness of the environment can be established by the past history. The court in *In re Bishop, supra,* at 126, 521 N.E. 2d at 841-842, discusses this as follows:

"Finally, the child does *not* first have to be put into a particular environment before a court can determine that that environment is unhealthy or unsafe. *In re Campbell, supra* (13 Ohio App. 3d), at 36, 13 OBR at 38-39, 468 N.E. 2d at 96; *In re Turner, supra.* The unfitness of a parent, guardian or custodian can be predicted by past history.

" '* * * [A] child should not have to endure the inevitable to its great detriment and harm in order to give the * * * [parent, guardian, or custodian] an opportunity to prove her suitability. To anticipate the future, however, is at most, a difficult basis for a judicial determination. The child's present condition and environment is the subject for decision not the expected or anticipated behavior of unsuitability or unfitness of the * * * [parent, guardian, or custodian]. * * * The law does not require the court to experiment with the child's welfare to see if he will suffer great detriment or harm.' *In re East, supra* (32 Ohio Misc.), at 69, 61 O.O. 2d at 41, 288 N.E. 2d at 346. See, also, *In re Custody of Minor* (1979), 377 Mass. 876, 882-883, 389 N.E. 2d 68, 73 (court need not wait until presented with maltreated child before it decides the necessity of 'care and protection'); *In re Interest of J.A.J.* (Mo. App. 1983), 652 S.W. 2d 745, 749 (to wait until child suffers harm to terminate parental rights would be 'a tragic misapplication of the law'); *New Jersey Div. of Youth & Family Services* v. *A.W.* (1986), 103 N.J. 591, 616, 512 A.

2d 438, 451, at fn. 14 (to wait until injury to decide issue of health and development of child makes no sense)." (Emphasis *sic*.)

Appellee has established by clear and convincing evidence that the environment was such that the state was warranted in intervening and taking temporary custody of all three children. For the foregoing reasons, appellants' second assignment of error is overruled and the judgment is affirmed.

*Judgment affirmed.*

GREY, P.J., and ABELE, J., concur.