DECISION AND JUDGMENT ENTRY
This is an appeal from a Hocking County Common Pleas Court, Juvenile Division, judgment awarding Hocking County Children Services (HCCS) permanent custody of Kenneth Dyal, born November 15, 1998.
Appellant, Veronica Dyal, the natural mother of the child, raises the following assignments of error for review:
FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN FINDING THAT THE APPELLANT FAILED TO REMEDY THE CONDITIONS THAT PROMPTED THE REMOVAL OF THE MINOR CHILD FROM HER CARE."
SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN ENTERING A FINDING THAT THE CHILD CANNOT BE PLACED WITH EITHER PARENT IN A REASONABLE TIME."
Our review of the record reveals the following facts pertinent to the instant appeal. On October 9, 1999, police officers responded to a report of an apparent suicide attempt at the home where appellant, Kenneth's natural mother, had been living with Kenneth and with Karen Moore, appellant's aunt. Moore reportedly attempted suicide in Kenneth's presence.
Both appellant and Kenneth were transported to the police station. HCCS Caseworker Linda Olvera met with appellant and Kenneth. Olvera noted that appellant appeared to be drunk and that appellant admitted she had taken three Klonidan. While at the police department, appellant became verbally assaultive toward the officers.
At the police station, Olvera reviewed pictures the officers had taken of the home where appellant and Kenneth had been staying and noted that: (1) blood covered the kitchen floor, table, and walls; (2) the home had dirty floors; and (3) beer bottles were scattered throughout the kitchen and living room. The officers subsequently arrested appellant for a probation violation and she spent six days in jail. On October 9, 1999, the trial court issued a protective order placing Kenneth in HCCS's temporary custody.
On October 11, 1999, HCCS filed a complaint alleging Kenneth to be a dependent child as defined in R.C. 2151.04(C) and requested temporary or protective custody of Kenneth. On October 26, 1999, appellant filed a complaint requesting the trial court to place Kenneth with Rhonda Smith, Kenneth's grandmother.
On November 15, 1999, HCCS filed a case plan that listed the following concerns: (1) substance abuse; (2) "GED" (General Education Degree); (3) driver's license; (4) inappropriate babysitters; (5) counseling; (6) probation; and (7) parenting. The case plan required appellant to address the foregoing concerns as follows: (1) appellant will have a complete drug and alcohol assessment, will follow her counselor's recommendations, will learn the effects alcohol and drugs have on her parenting skills and how it affects her child, and will attend a support group such as AA; (2) appellant will obtain her GED; (3) appellant will obtain a driver's license; (4) appellant will provide adequate day care and other services for Kenneth; (5) appellant will complete a mental health assessment and a psychological evaluation and will follow through on all recommendations; (6) appellant will abide by probation rules; and (7) appellant will attend parenting education classes to learn how to effectively parent.
On December 2, 1999, appellant admitted that her son is a dependent child. The court ordered Kenneth to remain in HCCS's temporary custody and ordered appellant to: (1) attend counseling at Tri-County Mental and Counseling; (2) follow the counselor's recommendation; (3) complete an alcohol and drug service program; (4) complete a GED program; and (5) obtain employment.
On October 11, 2000, HCCS filed a motion for permanent custody. In its motion, HCCS alleged that: (1) Kenneth had been in its temporary custody for at least twelve of the past twenty-two months;[1] (2) HCCS made diligent efforts to implement the case plan; (3) appellant had not completed parenting classes; (4) appellant had not attended counseling sessions; (5) appellant had been terminated from Stepping Stones, a treatment program, due to a lack of cooperation; (6) appellant recently tested positive for barbiturates on two separate occasions; (7) appellant had not paid any child support; (8) a relative placement was not available; and (9) Kenneth's best interest would be served by awarding HCCS permanent custody.
On November 9, 2000, Smith filed a motion for custody of Kenneth.
On November 30, 2000, the guardian ad litem filed his report and recommended that HCCS be given permanent custody of Kenneth. The guardianad litem noted that Kenneth's natural father's whereabouts are unknown and that the natural father has had no contact with Kenneth. The guardianad litem further stated that appellant "has taken no steps to work on the goals set by the case plan. She has not completed counseling sessions or drug treatment." The guardian ad litem also observed that appellant tested positive for drugs and that she has paid no child support. The guardian ad litem concluded that Kenneth's best interests require "a stable home environment as soon as possible."
On January 9, 2001, the trial court held a hearing regarding HCCS's permanent custody motion. At the hearing, appellant explained that following the October 9, 1999 incident, she spent six days in jail and that after her release from jail, she entered the Rural Women's Recovery Program (RWRP) where she stayed for approximately two months. Appellant stated that at RWRP: (1) she received assessment and treatment for her drug and alcohol problem; (2) she talked about mental health issues; (3) she received counseling, sometimes two or three times per week; (4) she attended, but did not complete, a GED course; and (5) she completed a parenting class.
RWRP case manager April Phillips testified that appellant successfully completed the program. Phillips stated that appellant: (1) maintained her sobriety while at RWRP; (2) completed a parenting course; (3) consistently attended the GED classes; and (4) received group and individual counseling primarily for drug and alcohol abuse. Phillips also explained that appellant has a "pretty high" risk of relapse.
Upon her release from RWRP, appellant entered a transitional living program called Stepping Stones, where she stayed for two or three months. Appellant admitted that she was terminated from the Stepping Stones program for various violations.
Appellant stated that she has maintained her sobriety for approximately the past four months and that she attends AA meetings two or three times per week. Appellant stated that for approximately the past eight months, she has been attending counseling for alcohol and marijuana usage at Health Recovery Services (HRS). Appellant believes that the treatment programs have helped her.
HRS employee Vicki Burkes stated that she assessed appellant for drug and alcohol treatment and that appellant was to receive twelve weeks of individual counseling. Burkes testified that appellant attended only one session.
TASC case manager Sandra Coen testified that appellant was terminated from the program because she tested positive on drug screens and because she missed four appointments. Coen stated that appellant returned positive drug screens on August 17 and 24, 2000, September 1, and 14, 2000 and November 11, 2000.
Appellant testified that her probation officer terminated her from probation because of her positive drug screens. Appellant stated that four of five months prior to the hearing she had positive screens.
Jim Powers, Director of the Community Corrections Program and Chief Probation Officer for the court, testified that appellant has been in his program for one year. Powers stated that appellant complied "on and off" with his rules. Powers explained that he terminated her from the program after she returned positive drug screens. Powers noted that appellant complied with the requirement to attend AA meetings, that he did not recall appellant failing any alcohol screenings, and that she attended most of her counseling. Powers further stated, however, that appellant remains at risk of being sent to jail for probation violations.
Appellant stated that she was unsure whether she received a mental health assessment, as the case plan called for, in any of the treatment programs in which she has been involved. Appellant explained that she thought the HCCS caseworker received one evaluation. Appellant further stated that she has a mental health assessment scheduled for January 14.
HCCS case worker Linda Olvera stated that she does not believe that appellant has received the counseling as required in the case plan. Olvera stated: "Only when she was in treatment has she done that and then when she was asked to leave Stepping Stones, she started in with Vick[i] Burkes around the first part of September, but then * * * she never completed that either." Olvera further stated that she believes appellant received an assessment for drug and alcohol problem while in treatment.
Appellant admitted that she presently does not have a permanent residence established for herself and for her son, should he be returned. Appellant stated, however, that she intends to move into a home within a few weeks and that she has received a "HUD certificate." Appellant further stated that part of the reason she has been unable to obtain a stable home is because she had been in treatment centers for approximately six months. Appellant stated that she currently resides either with Smith (her mother) or Karen Moore, her aunt.
Appellant stated that although she has not completed her GED, she continues to work on obtaining it. Appellant testified that a "college student friend" is helping her.
Appellant also stated that she has complied with the case plan requirement to obtain a driver's license, but that she does not yet have her own car. Appellant testified that she intends to purchase her mother's car when appellant gains employment.
Appellant also admitted that she currently is not employed and that she is receiving public assistance benefits. She stated that she plans to enroll at a truck driving school in Dayton, Ohio. Appellant explained that the schooling will take twenty-one days and that after the twenty-one days, she will train on the road for six weeks. After the six weeks, she will have her own vehicle.
Appellant noted that over the past year, she has worked a few different jobs. She worked at a hotel cleaning rooms for approximately one week. She worked as a waitress at a restaurant for approximately two days. She also worked as a home health care aid for a couple of months.
Appellant stated that she believes she will be ready to care for her son in approximately two or three months, when she obtains an adequate home and when she finds a job so that she can support her son. She testified that she believes her mother would be a good care provider for her son and that she has no concerns about Kenneth's safety when he is around Kenny, her stepfather.
Appellant admitted that she has a criminal record involving disorderly conduct and assault on a police officer and that both her mother and her mother's husband, Kenny Smith, have criminal records. Appellant also admitted that the State of Florida involuntarily terminated her parental rights with respect to another child.
Appellant testified that she enjoyed spending time with Kenneth during her two-hour supervised visits, but that she did not like having to visit in the room at the agency. She stated that she has brought clothes and toys to Kenneth during visits. Appellant explained that HCCS offered to increase her visitation time with Kenneth to three hours, but she refused. Although appellant testified that she wants to spend "all the time that [she] can" with her son, she stated that she did not want to increase her visitation to three hours if she would have to spend all of that time in the room at the agency.
HCCS employee Beverly Edwards stated that she has observed the supervised visits between appellant, Smith, and Kenneth. Edwards stated that appellant and Smith brought toys for Kenneth and that they brought clothes for Kenneth during Christmas. Edwards stated that: (1) Kenneth interacts well with his mother and his grandmother; (2) the three always look like they are having a good time; and (3) they appear to share a loving relationship. Edwards testified that she has not observed either appellant or Smith disciplining Kenneth in an inappropriate manner. Edwards stated that Smith likes to read to Kenneth while appellant likes to color with him. Edwards stated that Kenneth is a very happy boy, is easy to get along with and is outgoing.
Edwards testified that appellant and Smith do not always stay the full two hours allotted for visitation and that they canceled on five occasions. Edwards explained that HCCS offered to extend the visits to three hours but that appellant and Smith responded that they did not want to sit in the room for three hours. Edwards stated that the agency suggested that the visits could occur outside the agency building, but that appellant and Smith still refused.
Olvera stated that she believes Kenneth knows that appellant is his mother and that appellant enjoys being with her son. Olvera stated that she thinks appellant has "tried very hard" to substantially comply with the case plan, but that Olvera does not believe Kenneth could be placed with appellant within a reasonable amount of time. Olvera stated that in order for appellant to have her son returned, appellant needs to: (1) obtain her own home: (2) demonstrate that she can provide a stable home environment; and (3) remain drug and alcohol free. Olvera noted that since October 9, 1999, appellant has not failed any alcohol screenings and that the last three drug screens have been negative, but further noted that appellant has a high risk of relapse.
Olvera stated that she did not believe that placement with Smith offered an appropriate solution. HCCS investigated placing Kenneth with Smith and discovered that the State of Florida explored placing Dyal's other son with Smith, but determined Smith would not be suitable. HCCS also learned that Smith possesses a criminal record.
Smith testified that her oldest son left home at the age of fifteen and that she relinquished custody of appellant when appellant was a young child. Smith explained that her mother, who lived in Florida, was ill with cancer and that she sent appellant to stay with her. Smith stated that appellant lived with Smith's mother until Smith's mother died. Smith further stated that the State of Florida then refused to return appellant to her custody. When appellant was old enough, appellant lived with her aunt, Karen Moore. Smith noted that as a young child, appellant's father, an uncle, and a male babysitter had sexually molested appellant.
Smith stated that she does not think that appellant is currently ready to have her son returned to her custody, but that appellant might be ready to care for her son within the next year. Smith stated that she would be willing to care for Kenneth and that she has a room prepared for him.
On March 16, 2001, the trial court granted HCCS permanent custody of Kenneth. The court noted that: (1) the case plan required appellant to received treatment and to return clean drug and alcohol screens: (2) appellant attended RWRP for sixty days and completed the program; (3) appellant worked on her GED but did not obtain it; (4) appellant was terminated from Stepping Stones after failing to adhere to the rules; (5) appellant did not comply with the TASC program, a condition of her probation, and had several positive drug screens; (6) appellant does not have her own permanent residence, but stated that she is in the process of trying to obtain her own residence and that she has a "HUD certificate"; (7) appellant is not presently employed, but stated that she plans on attending truck driving school; (8) appellant had another child removed from her care three years ago; (9) Smith's residence appears to be satisfactory; (10) Smith and Smith's husband, Kenny, have criminal records, including theft, disorderly conduct, and possession of burglary tools; (11) Smith sent appellant as a young child to live with Smith's mother; and (12) appellant's natural father sexually abused her.
The court further found that appellant has a significant substance abuse problem and that appellant has failed to obtain employment, to obtain suitable and stable housing, and to obtain a GED. The court thus found that Kenneth could not be placed with appellant and that relative placement was not suitable.[2] The court noted that Kenneth is adoptable. The court therefore granted HCCS's motion for permanent custody.[3]
Because appellant's two assignments of error address the related issue of whether the trial court erred by awarding HCCS permanent custody of Kenneth, we will address the assignments of error together.
In her first and second assignments of error, appellant asserts that the trial court erred by determining that Kenneth could not or should not be placed with her in a reasonable amount of time due to appellant's failure to continuously and repeatedly substantially remedy the conditions that led to Kenneth's removal.
A parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her children. Santosky v. Kramer (1982), 455 U.S. 745,753, 102 S.Ct. 1388, 71 L.Ed.2d 599; In re Murray (1990),52 Ohio St.3d 155, 156, 556 N.E.2d 1169, 1171. Moreover, a parent has an "essential" and "basic civil right" right to raise his or her children.Murray.
The parent's rights, however, are not absolute. Rather, "`it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the pole star or controlling principle to be observed.'" In re Cunningham (1979), 59 Ohio St.2d 100,106, 391 N.E.2d 1034 (quoting In re R.J.C. (Fla.App. 1974), 300 So.2d 54,58). Thus, the state may terminate parental rights when the child's best interest demands such termination.
R.C. 2151.413 permits a public children services agency that has temporary custody of a child to file a motion requesting permanent custody of the child. In considering a motion filed pursuant to R.C.2151.413, the trial court must follow the guidelines set forth in R.C.2151.414.
R.C. 2151.414(A)(1) requires the trial court to hold a hearing regarding the motion for permanent custody. The primary purpose of the hearing is to allow the trial court to determine whether the child's best interests would be served by permanently terminating the parental relationship and by awarding permanent custody to the agency. See R.C.2151.414(A)(1).
The decision that the child is an abused, neglected, or dependent child may not be re-adjudicated at the hearing. See id. Once a child is adjudicated dependent as defined in R.C. 2151.04, the best interests of the child become the trial court's primary concern when determining whether granting permanent custody is justified. Cunningham, supra.
When reviewing a motion for permanent custody, a trial court should consider the underlying principles of R.C. Chapter 2151:
 (A) To provide for the care, protection, and mental and physical development of children * * *;
* * * *
 (C) To achieve the foregoing purpose, whenever possible, in a family environment, separating the child from its parents only when necessary for his welfare or in the interests of public safety.
R.C. 2151.01.
We note that clear and convincing evidence must exist to support a permanent custody award. The Ohio Supreme Court has defined "clear and convincing evidence" as follows:
 "The measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal."
In re Estate of Haynes (1986), 25 Ohio St.3d 101, 103-04, 495
N.E.2d 23, 26; see, also, State v. Schiebel (1990), 55 Ohio St.3d 71,74, 564 N.E.2d 54, 60. In reviewing whether the lower court's decision was based upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Schiebel,55 Ohio St.3d at 74, 564 N.E.2d at 60. If the lower court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment. Id.
Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." Id. Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained inSeasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273, 1276:
 "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."
R.C. 2151.414(B) permits a trial court to grant permanent custody of a child to an agency if the court determines, by clear and convincing evidence, that the child's best interest would be served by the award of permanent custody and that one of the following conditions applies:
 (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
(b) The child is abandoned.
 (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
Pursuant to the plain language of R.C. 2151.414(B)(1)(d), when a child has been in a children services agency's temporary custody for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, a trial court need not find that the child cannot or should not be placed with either parent within a reasonable time. See Inre Decker (Feb. 13, 2001), Athens App. No. 00 CA 42, unreported; In reFox (Sept. 27, 2000), Wayne App. Nos. 00 CA 38, 00 CA 39, 00 CA 40, 00 CA 41, unreported; In re Moody (Aug. 7, 2000), Athens App. No. 99 CA 63, unreported; In re Moody (Aug. 7, 2000), Athens App. No. 99 CA 62, unreported.[4] See, generally, In re Lusk (Nov. 27, 2000), Butler App. No. CA2000-07-139, unreported; In re Barker (June 16, 2000), Champaign App. No. 20001, unreported; In re Rodgers (June 5, 2000), Preble App. No. CA99-08-017, unreported.
Thus, when considering a permanent custody motion brought pursuant to R.C. 2151.414(B)(1)(d), the only other consideration becomes the best interests of the child.[5] A trial court need not conduct an R.C.2151.414(B)(1)(a) analysis of whether the child cannot or should not be placed with either parent within a reasonable time.[6]
R.C. 2151.414(D) requires the trial court to consider specific factors in determining whether the child's best interests would be served by granting the motion for permanent custody. The factors include: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.[7]
In the case at bar, we find ample competent, credible evidence to support the trial court's decision to award HCCS permanent custody of Kenneth. The evidence reveals that, as of the date of the permanent custody hearing, the child had been in HCCS's temporary custody for at least twelve of the prior twenty-two months. See R.C. 2151.414(B)(1)(d). The child initially was removed from the home on October 9, 1999, and the trial court adjudicated the child dependent on December 2, 1999. For purposes of R.C. 2151.414(B)(1)(d), a child is considered to enter "the temporary custody of an agency on the earlier of the date the child is adjudicated [dependent] * * * or the date that is sixty days after the removal of the child from the home." R.C. 2151.414(B)(1). Thus, at the time of the permanent custody hearing, the child had been in HCCS's temporary custody, for purposes of R.C. 2151.414(B)(1)(d), for approximately thirteen months. Because the child had been in HCCS's temporary custody for at least twelve months of a twenty-two month period, the trial court's permanent custody award is justified upon a finding that permanent custody would serve the children's best interests.[8]
Substantial competent and credible evidence supports the view that the child's best interests would be served by awarding HCCS permanent custody. See R.C. 2151.414(D). With respect to the first factor under R.C. 2151.414(D), the child's interaction and interrelationship with his parents, siblings, and foster care providers, etc., the record reveals that the child appears to share a loving relationship with both his grandmother and his mother. HCCS employees testified that: (1) the supervised visits between Kenneth and appellant and his grandmother appeared to go well and that the three interacted in an appropriate manner; and (2) Kenneth smiled and appeared happy while in appellant's and his grandmother's presence. The employees further testified, however, that: (1) appellant did not always take advantage of the full two hours allotted for visitation; (2) appellant canceled five sessions; and (3) appellant refused HCCS's offer to extend visitation to three hours.
The record also reveals the following with respect to the second factor, the child's wishes as expressed directly by the child or through the guardian ad litem. Kenneth is too young to express his wishes, but we note that the guardian ad litem recommended that HCCS be awarded permanent custody of Kenneth.
Regarding the third factor, the custodial history of the child, at the time of the hearing the child had been in HCCS's temporary custody for over one year.
With respect to the fourth factor, the child's need for a legally secure placement, we agree with the guardian ad litem that the child deserves a stable, nurturing environment and that appellant has yet to demonstrate that she can provide a stable, safe, and nurturing environment for her son.
A consideration of the fifth factor further reveals that awarding HCCS permanent custody of Kenneth would serve Kenneth's best interests. The record reveals that appellant has had her parental rights involuntarily terminated with respect to another minor child. See R.C. 2151.414(E)(11).
After considering the foregoing five factors, the trial court reasonably could have concluded that awarding HCCS permanent custody of Kenneth would further Kenneth's best interest. Sufficient credible and competent evidence exists to support the trial court's decision.
In light of the foregoing, we conclude that the evidence supports the conclusion that the child's best interests would be served by awarding HCCS permanent custody. We again note that because R.C. 2151.414(B)(1)(d) permits a trial court to award a children services agency permanent custody upon finding that the child has been in temporary custody for at least twelve of the prior twenty-two months and that permanent custody would serve the child's best interest, a trial court need not render any finding relating to whether the child cannot or should not be placed with either parent (or whether the parent has substantially remedied the conditions causing the child's removal, see R.C. 2151.414(E)(1)). Therefore, appellant's argument that the evidence supports her claim that she has substantially remedied the conditions causing the children's removal has limited value with respect to the trial court's decision to award HCCS permanent custody. See, e.g., Moody, supra. Rather, it is not the parent's conduct, but the child's best interests that control.
Finally, although certain evidence relating to the child's condition and environment concerned what had occurred in the past, as we stated inIn re Burchfield (1988), 51 Ohio App.3d 148, 156-57, 555 N.E.2d 325,333:
 "`The child does not first have to be put into a particular environment before a court can determine that [the] environment is unhealthy or unsafe. * * * The unfitness of a parent, guardian or custodian can be predicted by past history.'"
(quoting In re Bishop (1987), 36 Ohio App.3d 123, 126, 521 N.E.2d 838,841) (citations omitted). Furthermore, courts have recognized that:
 "'* * * [A] child should not have to endure the inevitable to its great detriment and harm in order to give the * * * [parent] an opportunity to prove her suitability. To anticipate the future, however, is at most, a difficult basis for a judicial determination. The child's present condition and environment is the subject for decision not the expected or anticipated behavior of unsuitability or unfitness of the * * * [parent]. * * * The law does not require the court to experiment with the child's welfare to see if he will suffer great detriment or harm.'"
Bishop, 36 Ohio App.3d at 126, 521 N.E.2d at 841-42 (quoting In reEast (1972), 32 Ohio Misc. 65, 69, 288 N.E.2d 343, 346).
Accordingly, based upon the foregoing reasons, we overrule appellant's first and second assignments of error and affirm the trial court's judgment.
JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Harsha, J.: Concurs in Judgment Only.
Evans, J.: Concurs in Judgment Opinion.
 _________________________________ Peter B. Abele, Presiding Judge
[1] In its brief, appellee asserts that it filed its motion pursuant to R.C. 2151.413(D)(1), which requires a children services agency to file a motion for permanent custody "if [the] child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999." Appellee notes that Kenneth was removed from the home October 9, 1999 and that it filed the motion requesting permanent custody on October 11, 2000. According to appellee, R.C. 2151.413(D)(1) thus mandated that it file for permanent custody.
R.C. 2151.413(D)(1) further provides, however, that for purposes of determining when the child entered temporary custody, the date of removal is not controlling. Rather, the statute specifies that when determining whether the agency is required to file a permanent custody motion pursuant to the twelve out of twenty-two month provision contained in R.C. 2151.413(D)(1), "a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated [dependent, neglected, or abused] or the date that is sixty days after the removal of the child from the home."
In the case at bar, Kenneth was removed from the home on October 9, 1999 and the trial court adjudicated Kenneth dependent on December 2, 1999. For purposes of R.C. 2151.413(D)(1), therefore, Kenneth entered HCCS's temporary custody on December 2, 1999. Appellee's R.C.2151.413(D)(1) motion seeking permanent custody thus was premature. We recognize, however, that R.C. 2151.413(A) permits a public children services agency to file, without any restriction as to time, a motion requesting permanent custody of a child who has been adjudicated abused, neglected, or dependent and for whom the court has issued a dispositional order in accordance with R.C. 2151.353. Thus, although HCCS erroneously asserted that R.C. 2151.413(D)(1) required it to file a motion seeking permanent custody, its error did not affect the trial court's ability to consider the motion for permanent custody.
[2] The trial court also found that Kenneth could not be placed with his natural father, as his natural father did not participate in the proceedings and as his father has expressed no interest in Kenneth.
[3] We note that the trial court's entry awarding HCCS permanent custody contains no explicit finding regarding Kenneth's best interests and that R.C. 2151.414(B)(1) prohibits a trial court from granting a children services agency's request for permanent custody unless the court determines, inter alia, that the grant of permanent custody would be in the child's best interests. We further recognize, however, that:
 "`A trial court is not required to specifically enumerate each factor under R.C. 2151.414(D) in its decision.' In re Heyman (Aug. 13, 1996), Franklin App. No. 96APF02-194. Further, R.C. 2151.414(D) does not require that the trial court set forth the specific factual findings that correlate to the factors set forth in the statute unless a party requests findings of fact and conclusions of law. In re Covin (1982), 8 Ohio App.3d 139, 141, 456 N.E.2d 520."
In re Day (Feb. 15, 2001), Franklin App. No. 00AP-1191, unreported; see, also, In re Templeton (Mar. 5, 2001), Brown App. Nos. CA2000-07-019 and CA2000-07-020, unreported.
Although in the case at bar the trial court did not explicitly state that it found a grant of permanent custody to HCCS would serve Kenneth's best interests, we believe that the judgment entry as a whole reflects that the trial court applied the appropriate statute, R.C. 2151.414, and that the trial court concluded that the grant of permanent custody serves Kenneth's best interests. Compare In re Hurlow (Nov. 6, 1997), Gallia App. Nos. 97 CA 8 and 10, unreported (noting that the trial court's judgment entry failed to indicate that the court applied the appropriate statute).
We would further note, however, that in order to avoid any confusion regarding whether the trial court considered a child's best interests, the better practice would be to explicitly state that the grant of permanent custody serves a child's best interests.
[4] In Moody, we noted as follows:
 "On March 18, 1999, Am.Sub.H.B. No. 484 ("HB 484") became effective and amended R.C. 2151.414. Prior to this amendment, a trial court could grant permanent custody of a child who had not been abandoned or orphaned only if doing so was in the best interest of the child and the trial court found that the child could not be placed with the parent within a reasonable time or should not be placed with the parent. After HB 484's amendments, a trial court may grant permanent custody of a child who has not been abandoned or orphaned to an agency if doing so is in the best interest of the child and the child has been in the temporary custody of one or more public children services agencies for at least twelve months of a twenty-two month period ending on or after March 18, 1999. See R.C. 2151.414(B)(1)(d). If the child has not been in the agency's custody for the requisite period of time (and has not been abandoned or orphaned), the trial court may grant permanent custody to the agency only if the child could not be placed with the parent within a reasonable time or should not be placed with the parent. R.C. 2151.414(B)(1)(a). Thus, the trial court is required to determine whether the child could not be placed with the parent within a reasonable time or should not be placed with the parent only if the child is not abandoned, orphaned, or has not been in the temporary custody of one or more public children services agencies for at least twelve months of a twenty-two month period ending on or after March 18, 1999. R.C. 2151.414(B)(1); R.C. 2151.414(B)(2)."
[5] Although we noted supra that HCCS prematurely filed its permanent custody motion pursuant to R.C. 2151.413(D)(1), we do not believe that the filing of a permanent custody motion prior to the expiration of the twelve months out of the twenty-two month period affects the trial court's decision to award permanent custody pursuant to R.C.2151.414(B)(1)(a). The statute appears to permit the trial court to award permanent custody if the child has been, as of the date of the permanent custody hearing (as opposed to the date the permanent custody motion was filed), in the children services agency's custody for at least twelve out of the prior twenty-two months.
[6] In the case sub judice, the trial court determined that the minor child could not be returned to appellant's custody within a reasonable time. See R.C. 2151.414(B)(1)(a). In light of R.C.2151.414(B)(1)(d), however, such a finding is irrelevant. Nevertheless, as we discuss, infra, we believe that the trial court's conclusion in the instant case is fully supported by the evidence adduced at trial.
[7] R.C. 2151.414(E)(7) to (11) provide as follows:
 (7) The parent has been convicted of or pleaded guilty to one of the following:
 (a) An offense under section 2903.01, 2903.02, or 2903.03
of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense was a sibling of the child or the victim was another child who lived in the parent's household at the time of the offense;
 (b) An offense under section 2903.11, 2903.12, or 2903.13
of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
 (c) An offense under division (B)(2) of section 2919.22
of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense is the victim of the offense;
 (d) An offense under section 2907.02, 2907.03, 2907.04, 2907.05, or 2907.06 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
 (e) A conspiracy or attempt to commit, or complicity in committing, an offense described in division (E)(7)(a) or (d) of this section.
 (8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.
 (9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 [2151.41.2] of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.
(10) The parent has abandoned the child.
 (11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 [2151.35.3] or 2151.415 [2151.41.5] of the Revised Code with respect to a sibling of the child.
[8] Moreover, we agree with the trial court's conclusion that the evidence supports the finding that Kenneth could not be returned to appellant's custody within a reasonable time. The trial court's judgment included a detailed account of the evidence. The court noted, interalia, that: (1) HCCS made diligent efforts to implement the case plan; (2) appellant failed to substantially remedy the conditions which caused Kenneth to be placed outside the home (e.g. failure to comply with and complete alcohol and substance counseling, failure to obtain employment, failure to obtain a GED, and failure to obtain suitable and stable housing).